SOCIALIST WORKERS PARTY *v.* ATTORNEY GENERAL

No. A–534. Decided December 27, 1974

MR. JUSTICE MARSHALL, Circuit Justice.

This case is before me on an application to stay an order entered by a panel of the Court of Appeals for the Second Circuit, vacating in part an order of the District Court for the Southern District of New York. The District Court had granted a preliminary injunction against the Director of the Federal Bureau of Investigation and

others, barring Government agents and informants from attending or otherwise monitoring the national convention of the Young Socialist Alliance (YSA), to be held in St. Louis, Mo., between December 28, 1974, and January 1, 1975. Applicants also seek to have the injunction of the District Court reinstated in full.

Applicants, the Socialist Workers Party, the YSA—the party's youth organization—and several individuals, originally brought this action against various Government officials, seeking injunctive and monetary relief for alleged governmental interference in the political activities of the two organizations. In the course of preparing for trial on the merits, the applicants apparently learned that the FBI planned to monitor the YSA national convention and to use confidential informants to gain information about convention activities. They sought to enjoin the FBI, its agents, and its informants from "attending, surveilling [sic], listening to, watching, or otherwise monitoring," the convention. After several hearings, the District Court granted the injunction in the form requested by the plaintiffs. On an expedited appeal,[1] the Court of Appeals vacated the District Court's injunction in all respects except one: it barred the FBI from transmitting the names of persons attending the convention to the Civil Service Commission pending final determination of the action. For the reasons stated below, I have concluded that on the facts of this case, the extraordinary relief of a stay is not warranted.

---

[1] Applicants object to the Court of Appeals' treatment of the case as an appeal, after initially setting it as a motion for a stay. When the time is as short as it was in this case, of course, the difference between the two is very slight. The court's determination that the District Court abused its discretion in ordering the injunction would appear to meet the standard of review for either a stay or the reversal of a preliminary injunction.

## I

The applicants argue that a stay is necessary to protect the First Amendment speech and association rights of those planning to attend the YSA convention. Surveillance and other forms of monitoring, they claim, will chill free participation and debate, and may even discourage some from attending the convention altogether. Beyond this, the applicants allege that the FBI has admitted that its agents or informants "intend to participate in the convention debate posing as *bona fide* YSA members."[2] This "double agent" activity, the applicants claim, will result in "corruption of the democratic process" and consequent irreparable harm to the applicants and others who would participate in the convention.

The applicants further assert that granting the relief requested here will not result in injury to the FBI. The fact that the FBI has a duty to keep itself informed concerning the possible commission of crimes, applicants say, does not justify its permitting informants and agents to participate in the convention, since the YSA has not been shown to have engaged in illegal activities. They further claim that the risk that FBI informants will become identifiable by their nonattendance at the convention is not sufficient to support the Court of Appeals'

---

[2] Applicants argue that this admission, made after the District Court's decision, significantly alters the balance of the equities in this case. However, the Government has represented that no FBI agents will attend the convention and that the informants who are members of the YSA will participate in the convention only in a manner consistent with their previous roles in the organization. The Government assured both the Court of Appeals and me that the FBI has authorized no disruptive activity at the YSA convention. To require informants who may be active members of the organization to remain silent throughout the convention would render them as readily identifiable in some cases as an order excluding them.

order. While the applicants' allegations evoke an unsavory picture of deceit and political sabotage, the facts as characterized by the Court of Appeals suggest a less sinister view of the Government's planned activities at the convention. The court noted that the convention would be open to anyone under the age of 29; that anyone could register; that even the "delegated" sessions would be open to anyone registered at the convention; that the Government planned no electronic surveillance or disruptive activity; and that the only investigative method would be the use of informants who would attend the meetings just as any member of the public would be permitted to do.

The Court of Appeals held that on the facts of this case, the chilling effect on attendance and participation at the convention was not sufficient to outweigh the serious prejudice to the Government of permanently compromising some or all of its informants. The 11th-hour grant or denial of injunctive relief would not be likely to have a significant effect on attendance at the convention, the court stated, and since the convention is to be open to the public and the press, the use of informants to gather information would not appear to increase appreciably the "chill" on free debate at the convention. In weighing the nature of the planned investigative activity, the justification for that activity, and the claimed First Amendment infringement in this case, the Court of Appeals determined that the balance of the equities tipped in favor of the Government and that a preliminary injunction was therefore improper.

## II

This case presents a difficult threshold question—whether the applicants have raised a justiciable controversy under this Court's decision in *Laird* v. *Tatum,* 408

U. S. 1 (1972). In *Laird*, the plaintiffs protested surveillance activities by the Army that were in many ways similar to those planned by the FBI in this case. The Court held, however, that the plaintiffs' claim that the Army's surveillance activities had a general chilling effect on them was not sufficient to establish a case or controversy under Art. III of the Constitution.

The Government has contended that under *Laird*, a "chilling effect" will not give rise to a justiciable controversy unless the challenged exercise of governmental power is "regulatory, proscriptive, or compulsory in nature," and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he is challenging. *Id.*, at 11. In my view, the Government reads *Laird* too broadly. In the passage relied upon by the Government, the Court was merely distinguishing earlier cases, not setting out a rule for determining whether an action is justiciable or not. More apposite is the Court's observation in *Laird* that the respondents' claim was

> "that they disagree with the judgments made by the Executive Branch with respect to the type and amount of information the Army needs and that the very existence of the Army's data-gathering system produces a constitutionally impermissible chilling effect upon the exercise of their First Amendment rights." *Id.*, at 13.

Because the "chilling effect" alleged by respondents in *Laird* arose from their distaste for the Army's assumption of a role in civilian affairs or from their apprehension that the Army might at some future date "misuse the information in some way that would cause direct harm to [them]," *ibid.*, the Court held the "chilling effect" allegations insufficient to establish a case or controversy.

In this case, the allegations are much more specific: the applicants have complained that the challenged investigative activity will have the concrete effects of dissuading some YSA delegates from participating actively in the convention and leading to possible loss of employment for those who are identified as being in attendance. Whether the claimed "chill" is substantial or not is still subject to question, but that is a matter to be reached on the merits, not as a threshold jurisdictional question. The specificity of the injury claimed by the applicants is sufficient, under *Laird,* to satisfy the requirements of Art. III.

## III

Although the applicants have established jurisdiction, they have not, in my view, made out a compelling case on the merits. I cannot agree that the Government's proposed conduct in this case calls for a stay, which, given the short life remaining to this controversy, would amount to an outright reversal of the Court of Appeals.

It is true that governmental surveillance and infiltration cannot in any context be taken lightly. The dangers inherent in undercover investigation are even more pronounced when the investigative activity threatens to dampen the exercise of First Amendment rights. See *DeGregory* v. *New Hamp. Atty. Gen.,* 383 U. S. 825 (1966); *Gibson* v. *Florida Legislative Comm.,* 372 U. S. 539 (1963); *NAACP* v. *Alabama,* 357 U. S. 449 (1958). But our abhorrence for abuses of governmental investigative authority cannot be permitted to lead to an indiscriminate willingness to enjoin undercover investigation of any nature, whenever a countervailing First Amendment claim is raised.

In this case, the Court of Appeals has analyzed the competing interests at some length, and its analysis seems to me to compel denial of relief. As the court

pointed out, the nature of the proposed monitoring is limited, the conduct is entirely legal, and if relief were granted, the potential injury to the FBI's continuing investigative efforts would be apparent. Moreover, as to the threat of disclosure of names to the Civil Service Commission, the Court of Appeals has already granted interim relief. On these facts, I am reluctant to upset the judgment of the Court of Appeals.[3]

As noted above, the Government has stated that it has not authorized any disruptive activity at the convention. In addition, the Government has represented that it has no intention of transmitting any information obtained at the convention to nongovernmental entities such as schools or employers. I shall hold the Government to both representations as a condition of this order. Accordingly, the application to stay the order of the Court of Appeals and to reinstate the injunction entered by the District Court is

*Denied.*

---

[3] This is especially true where, as here, the matter before me involves a preliminary injunction granted without a full hearing on the merits. Much of the information before me is in dispute. The denial of the stay in this case in no way affects the outcome of the case on the merits, which was filed in 1973 and is still pending in the District Court.