**FOUNDING CHURCH OF SCIENTOLO-GY OF WASHINGTON, D. C., INC., Plaintiff,**

v.

**DIRECTOR, FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civ. A. No. 78–0107.**

United States District Court, District of Columbia.

Oct. 19, 1978.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on the plaintiff's motion for class certification and the defendants' motion to dismiss. For the reasons hereinafter stated, the Court will grant plaintiff's motion for class certification in part and will grant defendants' motion to dismiss in part.[1]

## I. BACKGROUND

Plaintiff, the Founding Church of Scientology of Washington, D. C., is a non-profit corporation chartered and operating under the laws of the District of Columbia as a religious organization practicing the religion of Scientology.[2] Plaintiff brought this case as a class action, purporting to represent "all Churches of Scientology and Scientology missions located throughout the United States."

The defendants include public officers of the United States and are sued in their official capacities only: the Director of the Federal Bureau of Investigation, the Attorney General of the United States, the Director of the Central Intelligence Agency, the Secretary of the Treasury, the Chief of the National Central Bureau of the International Criminal Police Organization, the Director of the National Security Agency, the Secretary of the Army, and the Postmaster General of the Postal Service. The United States is also named as a defendant.

Earl C. Dudley, Jr., Robert A. Seefried, Washington, D. C., for plaintiff.

Barbara Allen Babcock, Asst. U. S. Atty. Gen., Barbara B. O'Malley, Elizabeth Gere Whitaker, David H. White, Brian G. Kennedy, Mauricio A. Flores, Civil Div., Dept. of Justice, Washington, D. C., for defendants.

Plaintiff commenced the instant action on January 24, 1978, three weeks after dismissing on its own motion a virtually identical action which had been filed on January 31, 1977. *See The Founding Church of Scientology v. Clarence Kelley, et al.,* C.A. No. 77–0175 (D.D.C. January 31, 1977).

1. Because of the complexity of the issues in this case and to help expedite the ultimate resolution of this entire matter, the Court will address many of the issues raised in the pending motions which, because of the resolution of certain issues, would otherwise not be reached.

2. Because this case is before the Court on a motion to dismiss, the Court will accept the allegations made in the complaint as true. *See Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Nothing in the "Background" section should in any way be construed as a finding of fact.

Plaintiff alleges that it, as well as the class it seeks to represent, has been the subject of a government-wide conspiracy to destroy a religion. Plaintiff claims that its constitutional and statutory rights have been violated in that the defendants have improperly maintained and disseminated information regarding the plaintiff; harassed, observed, and infiltrated the plaintiff organization; "blacklisted" members of the plaintiff; and subjected the plaintiff to discriminatory tax audits. This conspiracy, plaintiff claims, began about the year 1955 and allegedly continues to date. Plaintiff charges that these alleged actions of the defendants were in violation of the first, fourth, fifth, ninth and fourteenth amendments to the Constitution; 28 U.S.C. § 534, 42 U.S.C. § 1985(3), 18 U.S.C. § 2520, 50 U.S.C. § 403(d), 47 U.S.C. § 605, 18 U.S.C. §§ 1702 and 1703, and 28 U.S.C. § 2674.

In terms of relief, plaintiff seeks a declaratory judgment that the alleged actions of the defendants violate the Constitution. Plaintiff also requests an injunction restraining all the defendants from interrogating, observing, infiltrating, reviewing or opening mail, disrupting travel or collecting or utilizing any information regarding the plaintiff. Plaintiff further requests the expungement of all information and files regarding the plaintiff that is in the possession of the defendants. In addition, plaintiff demands from the United States compensatory damages totalling $20 million, and punitive damages of ten times the amount of compensatory damages awarded by the Court, not to exceed $750 million.

## II. JURISDICTIONAL ISSUES AND CLAIMS UPON WHICH RELIEF MAY BE GRANTED

The Court, upon initially reviewing the extensive allegations in the complaint, directed the parties to submit memoranda concerning the statutes and constitutional provisions relied upon by the plaintiff herein. Although plaintiff enumerated several sources of liability in its complaint, plaintiff now admits that "several of the statutes cited are not necessarily relied upon as independent sources of damage liability, but rather to establish standards of legality governing the conduct of government officials . . ." (Memorandum of Law Concerning Statutes and Constitutional Provisions Relied Upon at 2, February 13, 1978) Therefore, the Court need not now concern itself with whether every statute cited in the complaint properly states a claim upon which relief may be granted. Moreover, because no motion specifically based on the jurisdictional issues has been made and because of the Court's opinion in part IV B, *infra*, the Court need rule on neither of these jurisdictional issues nor whether these statutes state a cognizable claim. However, in order to expedite this litigation, the Court *sua sponte* has decided some of the basic jurisdictional issues set forth in the complaint even though the Court's final resolution of the motion to dismiss obviates the need to decide all jurisdictional questions at this time.

As to plaintiff's claim for declaratory and injunctive relief, the Court notes, and the defendants appear to concede, that plaintiff has properly based jurisdiction on 28 U.S.C. § 1331. In addition, plaintiff has properly asserted a claim against the defendant officials for injunctive relief under the first and fourth amendments, and perhaps other amendments as well. *See Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975); *Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144 (D.D.C.1976).

As to plaintiff's claim for damages against the United States, the Court notes that plaintiff has asserted a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680. According to this Act, unless expressly excepted, the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances . . .." 28 U.S.C. § 2674. In *Black v. Sheraton Corp. of America,* 184 U.S.App.D.C. 46, 54, 564 F.2d 531, 539 (1977), the court recognized the sweeping effect of this language:

As a result of this language, "the Government's liability is no longer restricted to circumstances in which government bod-

ies have traditionally been responsible for misconduct of their employees. The Act extends to novel and unprecedented forms of liability as well." *United States v. Muniz,* 374 U.S. [150] at 159, 83 S.Ct. [1850] at 1856 [10 L.Ed.2d 805]. (emphasis added). The court then found that liability predicated upon a violation of a constitutional right could give rise to a claim under the FTCA.

The district court in this case awarded damages to plaintiff invoking four overlapping theories of liability: trespass, invasion of privacy by intrusion, invasion of privacy by publication and *violation of constitutional rights.* [*Black v. U. S.,*] 389 F.Supp. 529, 531 (1975). None of the theories, which the district court invoked are among the exemptions from tort liability specified in the Tort Claims Act. 184 U.S.App.D.C. at 54, 564 F.2d at 539 (emphasis added).

■ The plaintiff herein relies upon at least two "torts" which, it claims, render the United States liable because these torts would create a liability against a "private individual under like circumstances." 28 U.S.C. § 2674. The first "tort" is a violation of plaintiff's first, fourth, fifth and ninth amendment rights. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1974) (fourth amendment); *Dellums v. Powell,* 184 U.S. App.D.C. 275, 566 F.2d 167 (1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (first amendment); *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975) (first amendment); *States Marine Lines, Inc. v. Schultz,* 498 F.2d 1146 (4th Cir. 1974) (fifth amendment). In a recent decision, *Norton v. United States of America,* 581 F.2d 390 (4th Cir. 1978), the court acknowledged the use of the FTCA for these *Bivens-*type of torts:

> While *Bivens* created a federal tort for certain violations of the fourth amendment, it did not (and indeed could not) impose liability on the officer's employer, the federal government. [To correct this,] Senator Percy proposed a rider to H.R. 8245 "to provide a remedy against

the United States for the intentional torts of its investigative and law enforcement officers." S.Rep. No. 93–588, *supra,* [1974] U.S.Code Cong. & Admin.News at 2789. Enacted in March 1974, as Pub.L. No. 93–253, § 2, this legislation amended FTCA to create an exception to the intentional-tort exception of 28 U.S.C. § 2860(h).

\* \* \* \* \* \*

> The legislative history, however, makes clear that the 1974 amendment [to the FTCA] was viewed by Congress as a "counterpart to the *Bivens* case. . . ." S.Rep. No. 93–588, *supra,* . . .

581 F.2d at 393. *See Birnbaum v. United States,* 436 F.Supp. 967, 974–75 (E.D.N.Y. 1977). Thus, plaintiff herein could proceed under the FTCA, while relying upon a constitutional tort theory.

■ The second "tort" relied upon by the plaintiff is that created by 42 U.S.C. § 1985(3). Under this statute, recovery may be had against "persons" if a plaintiff establishes (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities *under the laws,* (3) pursuant to which one or more of the conspirators did or caused to be done an act in furtherance of the object of the conspiracy, whereby (4) the plaintiff was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

■ In applying the elements of 42 U.S.C. § 1985(3) to the facts of this case, the Court notes that there are two initial obstacles, which may well be surmountable. First, federal officials should be considered "persons" within the meaning of § 1985(3). *See Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926, 931 (10th Cir. 1975); *Stith v. Barnwell,* 447 F.Supp. 970 (M.D.N.C.1978); *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D.Ill. 1977); *Butler v. United States,* 365 F.Supp. 1035 (D.Hawaii 1973). Second, the statute

is not limited to racial discrimination but includes any "class-based, invidiously discriminatory animus," such as that alleged here. 403 U.S. at 102, 91 S.Ct. 1790. Having thus established the potential applicability of § 1985(3) to a suit by these plaintiffs against the *officers,* the plaintiff can, therefore, maintain an action against the *United States,* because the FTCA makes the United States liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

### III. MOTION FOR CLASS CERTIFICATION

Plaintiff seeks in this litigation to represent the class of "all Churches and Missions of the Church of Scientology located in the United States." Asserting that the prerequisites of Fed.R.Civ.P. 23(a) are met, plaintiff asks that the class be certified under either Rule 23(b)(1), (2), or (3).

Defendants do not challenge the application of the language of Rule 23 to this case. However, defendants do challenge the proposed certification on two grounds apart from Rule 23: (1) that the Court lacks jurisdiction to adjudicate the damage claims of the proposed class members because they have failed to exhaust their administrative remedies, required by 28 U.S.C. § 2675(a);[3] and (2) that the injunctive relief sought would have the same effect as a class-wide injunction. The Court agrees with defendants' first objection, but not their second.

A. *Under the FTCA, Each Alleged Class Member Must Exhaust His or Her Administrative Remedies, Which Has Not Been Done Here and, Therefore, Plaintiff May Not Maintain This Case as a Class Action for Damages.*

■■ Section 2675(a) of Title 28 of the United States Code states:

An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . .

This requirement of exhaustion of administrative remedies is jurisdictional and is an absolute prerequisite to an action under the FTCA. *Melo v. United States,* 505 F.2d 1026, 1028 (8th Cir. 1974); *Best Bearings Co. v. United States,* 463 F.2d 1177, 1179 (7th Cir. 1972); *Bialowas v. United States,* 443 F.2d 1047 (3d Cir. 1971). The issue here is whether proper exhaustion by one class member obviates the need for other class members to exhaust, in order for the Court to have jurisdiction over the entire class. All the courts that have considered this issue have concluded that *every* member of a class must exhaust his administrative remedies. *See Lunsford v. United States,* 570 F.2d 221 (8th Cir. 1977); *Caidin v. United States,* 564 F.2d 284 (9th Cir. 1977); *Commonwealth of Pennsylvania v. National Association of Flood Insurance,* 520 F.2d 11 (3d Cir. 1975); *Harrigan v. United States,* 63 F.R.D. 402 (E.D.Pa.1974). These decisions accord with the purpose of the exhaustion requirement as well as other case law.[4]

The purpose of the exhaustion requirement, as stated in the Senate and House Reports, is

to improve and expedite disposition of monetary claims against the Government by establishing a system of prelitigation settlement, to enable consideration of claims by the agency having the best information concerning the incident, and to ease court congestion and avoid unnecessary litigation.

S.Rep. No. 1327, 89th Cong., 2d Sess. 3 (1966); H.R. Rep. No. 1532, 89th Cong., 2d Sess. 4 (1966); U.S.Code Cong & Admin. News 1966, p. 2515. The Court finds these

---

3. Plaintiff has admitted that "the only member of the proposed class which has presented administrative claims under the Federal Tort Claims Act is the [named] plaintiff." (Memorandum of Points and Authorities in Support of Motion for Class Action Certification at 9, February 13, 1978)

4. The discussion of the exhaustion requirement involved here is applicable only to the FTCA and does not apply to the procedure in a class action under 42 U.S.C. § 2000e *et seq. See* p. 755, *infra.*

reasons fully supportive of requiring each member of a class to exhaust his administrative remedies. If the Court were to allow the exhaustion of one to be sufficient, this might well delay the litigation and burden the court congestion because, had some of the class members exhausted and had the agency settled their claims, the ultimate litigation would be quicker and less complex.

■ Every member of the class must usually comply with the jurisdictional prerequisites in a damage suit. In *Harrigan v. United States,* 63 F.R.D. 402 (E.D.Pa.1974), the court discussed the significance of a jurisdictional requirement.

> The Supreme Court held [in *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)] that a class action was not maintainable since the separate claims of all the members of the class failed to satisfy independently the $10,000 jurisdictional requirement of 28 U.S.C. § 1332. It is concluded from the *Zahn* case that the jurisdictional requirement in the present case must also be met independently by the members of the purported class. To allow the named plaintiff here [in a suit under the FTCA], by the filing an administrative claim on his own behalf, to satisfy the administrative claim requirements for unnamed plaintiffs would constitute a prohibited expansion of the jurisdiction of the federal courts. *See Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

63 F.R.D. at 409.

■ Another basic requirement—which is integral to a proper claim to the agency under the FTCA—is that the claim state a sum certain. *Lunsford, supra* at 226. In fact, cases have been dismissed for failure of the claimant to state a sum certain in his or her administrative claim. *See Allen v. United States,* 517 F.2d 1328 (6th Cir. 1975); *Caton v. United States,* 495 F.2d 635 (9th Cir. 1974). The reason for the sum certain requirement is that if the agency

knows exactly what the claimant seeks, prelitigation settlement will more likely result. To allow the exhaustion of one claimant to satisfy the exhaustion requirement for all members of the class would eliminate the requirement that *each* claimant state a sum certain and the accompanying advantage to the prelitigation process. This Court will not allow this advantage to the prelitigation process to be bypassed.

■ Moreover, it is interesting to note that when Congress amended § 2675(a) to its present form in 1966, it considered the possible relationship between the exhaustion requirement and the Federal Rules of Civil Procedure. The last sentence of the provision states:

> The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, crossclaim, or counterclaim.

Congress thus considered the impact of the exhaustion requirement on the Federal Rules of Civil Procedure and, by virtue of the notion of *expressio unius est exclusio alterius,* decided not to waive the exhaustion requirement for Rule 23.

While acknowledging the existence of contrary authority, plaintiff relies upon an analogy to Title VII law, 42 U.S.C. § 2000e *et seq.,* for its contention that not all members of a class need exhaust. Plaintiff argues that because the instant case is actually one seeking recourse for violation of civil rights, the rule under Title VII—that only the named plaintiffs need exhaust—should be applicable.[5] The requirement of exhaustion is a *statutory* one; therefore, it must be the statute which is inherently appropriate for class action treatment to allow the exhaustion of one to satisfy the requirement for the entire class. While Title VII actions are inherently class-based, *see Bowe v. Colgate Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969), actions under the FTCA are not. When the Title VII rule developed, it was based upon Congress's intent to provide

---

5. This analogy was explicitly rejected in *Lunsford v. United States,* 570 F.2d 221 (8th Cir. 1977).

a basis for jurisdiction consistent with the policy of the Title VII statute. In light of the FTCA and its policy, the Court cannot conclude that Congress intended the "named plaintiff exhaustion" rule to apply to the FTCA. Thus, even if a single FTCA case raises Title VII-like claims and seems appropriate for the "named plaintiff exhaustion" rule, the analogy to Title VII law fails. Accordingly, each member of the plaintiff class must exhaust his or her administrative remedies. This not being the case at bar, the Court will not certify the class for purposes of damage relief.

B. *The Court Will Conditionally Certify the Class Under Fed.R.Civ.P. 23(b)(2) for Purposes of Injunctive Relief Only.*

Defendants argue that this Court can fashion injunctive relief that would protect the members of the class, even without certifying the class. The Court thanks the defendants for the confidence they have in it but the Court has, nevertheless, decided to conditionally certify the class for purposes of the injunctive relief sought, pursuant to Fed.R.Civ.P. 23(b)(2).

Treating this as a class action will prevent any party from withholding discovery material on the basis that it relates to an entity not included in a class. Furthermore, as a class action under Fed.R.Civ.P. 23(b)(2), in all probability it may be easier for members of the class to enforce an injunction in the future, should one be issued in this case.

## IV. MOTION TO DISMISS

The defendants move to dismiss this action pursuant to Fed.R.Civ.P. 8(a) and 12(b). The Court will discuss each of the defendants' arguments seriatim.

A. *The Complaint Complies Sufficiently with Fed.R.Civ.P. 8(a) Because it Presents a Plain Statement of the Claim Showing that the Pleader is Entitled to Relief.*

Defendants move to dismiss the complaint because, they allege, it is a gener-

al, amorphous pleading not in accord with the requirements of Fed.R.Civ.P. 8(a). This provision provides that

a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) *a short and plain statement of the claim showing that the pleader is entitled to relief,* and (3) a demand for judgment for the relief to which he deems himself entitled.

(emphasis added). Defendants argue that the lengthy complaint contains "prolix and irrelevant matter," "fails to provide any specificity as to date or location of the activity, who was involved, or any other information which adequately sets out the elements of a claim or gives defendants fair notice of what is complained of." (Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 4–5, February 13, 1978) Furthermore, defendants note, because of the generality of the allegations in the complaint, it is difficult to discern what claims may be barred by prior litigation on grounds of collateral estoppel or *res judicata.*

Although the Court is sensitive to defendants' problems in dealing with the complaint, the Court will not dismiss the complaint. "[T]he Federal Rules of Civil Procedure do not require a claimant to act out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Bogosian v. Gulf Oil Co.,* 561 F.2d 434, 446 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). All that is required is a "short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). However, the complaint is puzzling; it does not permit the defendants—nor the Court—to judge exactly what prior actions may bar the present one. Plaintiff's response has been, essentially, that only through discovery can the plaintiff know the specific

acts allegedly concealed by the claimed conspirators. Although as a matter of law the complaint is sufficient, the Court will direct the plaintiff to make specific factual allegations once discovery has progressed further. Therefore, the Court will deny the defendants' motion to dismiss without prejudice to refiling after more discovery is conducted and plaintiff has had an opportunity to state more precisely and concisely its allegations.

B. *The Court Lacks Jurisdiction Over Plaintiff's Action for Damages Under the Federal Tort Claims Act Because Plaintiff Failed to Exhaust Its Administrative Remedies.*

The defendants next argue that a prerequisite to a suit under the FTCA has not been met because plaintiff failed to properly exhaust its administrative remedies. In its complaint, plaintiff contends that it filed administrative claims with "the FBI, the CIA, Department of Treasury, Interpol, the NSA, the Department of the Army, and the United States Postal Service." (Complaint, ¶ 65) Defendants claim that plaintiff failed to sign the claims submitted to the CIA and the Treasury; that plaintiff's description of the wrong committed on the claim form was insufficient; and that the claims were ineffective because, having been submitted after a similar civil suit had been filed in this Court, the power to settle them was transferred from the agency to the Attorney General.[6]

On the claim forms (Standard Form 95), plaintiff indicated that the "incidents occurred throughout the U.S." "from 1955 to [the] present time." The injury alleged was "impairment and suppression of basic First Amendment freedoms of association and religion valued at $10,000,000.00." The plaintiff described the circumstances attending the injury:

[Agency] personnel secretly planned and executed a series of programs whose purpose and effect was to inhibit the growth of claimant organization and to impair its ability to formulate and exercise its religious beliefs and rights of association. [Agency] personnel negligently maintained intelligence and criminal files with respect to claimant organization, and negligently disseminated erroneous information from these files to state, local, federal and foreign agencies thereby damaging claimant organization.

As to defendants' argument that two of the claims were unsigned, plaintiff points out that the letters forwarding the claims, to which the Form 95's were attached, were signed by plaintiff's then-Vice President. "The necessity for a signature to the claim is to fix responsibility for the claim and the representations made therein." *Bialowas v. United States*, 443 F.2d 1047, 1050 (3d Cir. 1971). The Court finds that the signature of the Vice President of plaintiff *on the accompanying letters* was sufficient to "fix responsibility for the claims and the representations made therein."

Defendants next argue that the description of the claims was insufficient. Most of the cases in which the claim form was held to be sufficient are distinguishable on the basis that there the claim lacked a request for a sum certain. *See Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975).[7] Here, plaintiff clearly stated a sum certain. The question then becomes whether the general description of the wrong alleged was sufficient to properly present a claim to the government. The Court finds that the claims were too general to allow the agen-

**6.** The Court has no occasion to address this issue because of the Court's resolution of the issue regarding signing of the forms and the sufficiency of wrong asserted in the forms.

**7.** The Court in *Molinar* distinguished *Melo v. United States*, 505 F.2d 1026 (8th Cir. 1974); *Caton v. United States*, 495 F.2d 635 (9th Cir. 1974); *Avril v. United States*, 461 F.2d 1090 (9th Cir. 1972); *Ianni v. United States*, 457 F.2d 804 (6th Cir. 1972) (per curiam); *Bialowas v. United States*, 443 F.2d 1047 (3d Cir. 1971); *Johnson v. United States*, 404 F.2d 22 (5th Cir. 1968) (per curiam); *Jordan v. United States*, 333 F.Supp. 987 (E.D.Pa.1971), *aff'd without opinion*, 474 F.2d 1340 (3d Cir. 1973), on this basis.

cies to fully investigate the situation.[8] No specific time nor specific place nor specific incident was given for any alleged negligent maintenance or dissemination of erroneous information. Without this, the agencies could not effectively evaluate the claims presented.

> The purpose of requiring preliminary administrative presentation of a claim is to permit a government agency to evaluate and settle the claim at an early stage, both for the possibility of financial economy and for the sake of relieving the judicial burden of FTCA suits. These purposes would be defeated if a claimant could refuse to submit the information necessary for the agency to evaluate the claim and then present the matter for the first time to a district court.

*Kornbluth v. Savannah*, 398 F.Supp. 1266, 1268 (E.D.N.Y.1975). No administrative agency could be expected to settle a claim based on the scarce information provided by the plaintiff in this case. In finding the claims inadequate, the Court is aware that Form 95 was not designed for claims based on constitutional or statutory violations. *See Locke v. United States*, 351 F.Supp. 185, 188 (D.Hawaii 1972). However, this Court *cannot* excuse the plaintiff's failure to expand its broad-scale and unparticularized allegations in light of the failure of the plaintiff to respond to the requests of two agencies for supplemental information.[9] *See Rothman v. United States*, 434 F.Supp. 13, 16 (C.D.Cal.1977) ("Having alleged that the government's treatment of the decedent was negligent, it was plaintiffs' duty to respond to the government's request for substantiation with whatever information they possessed."); *Mudlo v. United States*, 423 F.Supp. 1373 (W.D.Pa.1976). In fact, 28

C.F.R. § 14.4(b)(6) *required* the plaintiff to respond to these requests.

> In support of a claim for personal injury, including pain and suffering, the claimant may be *required* to submit the following evidence or information:
>
> \* \* \* \* \* \*
>
> Any other evidence or information which may have a bearing on either *the responsibility of the United States for the personal injury* or the damages claimed.

(emphasis added). Therefore, having failed to submit additional information after being requested to do so, the claims submitted were inadequate.

■■■ While it is true that not all the agencies involved requested additional information from plaintiff, no estoppel against the government can be established here. For estoppel to apply, plaintiff must reasonably rely upon the government's action or inaction. *See Beverly Enterprises v. Califano*, 446 F.Supp. 599, 604 (D.D.C.1978); *Brown v. Richardson*, 395 F.Supp. 185, 191 (W.D.Pa.1975). No one could reasonably expect the silence of certain agencies to indicate the sufficiency of the claim when the description of the wrong was so general and where two agencies *did* indicate the insufficiency of the claim. Therefore, the plaintiff will not be permitted to invoke any estoppel against the government agencies that did not request further information.

While this result may appear harsh, the Court has gone out of its way to accommodate the plaintiff in submitting its administrative claims. The Court allowed plaintiff to dismiss its first case without prejudice so that plaintiff could properly file its administrative claims with the various agencies. Instead of seizing this opportunity to com-

---

**8.** The Court wishes to note that while the complaint herein has been held sufficient, the sufficiency of the claim in form serves a different purpose and must be evaluated on different grounds. The complaint need only show a "short and plain statement of the claim," Fed. R.Civ.P. 8(a)(2), and will be followed by extensive discovery.

**9.** Plaintiff claims it did not receive the October 31, 1977 letter from the Army and the National Security Agency, and that even if it had, the

letter was sent after the six months period following submission of the claims. However, the October 31, 1977 letter was sent by certified mail and the certification reflects receipt. Furthermore, and more importantly, the October 31, 1977 letter was a follow-up to a letter requesting further information sent on March 22, 1977. Plaintiff does not deny receipt of that letter, and it was well within the six month period.

ply fully with the technical requirements of a claim form, plaintiff has made efforts to thwart the entire claims process: it failed to sign the Form 95 that was sent to the CIA, although it had three chances to do so (Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 10–11, February 13, 1978); it failed to sign the Form 95 sent to the Treasury; it failed to supply additional information when asked to do so by the Army and the CIA (*Id.* at 11–12); it failed to adequately specify any specific events that the agencies could investigate, so as to settle a claim. These suggest the absence of good faith in the submission of the claims and are not helpful to the plaintiff in its attempt to persuade the Court that it has diligently filed the claim forms for the purpose of settlement at the agency level, as contemplated by the FTCA. Accordingly, the Court is forced to dismiss plaintiff's action for damages on the ground that the Court lacks jurisdiction over this claim because of plaintiff's failure to exhaust its administrative remedies, as is required by the plain and unmistakable mandate of 28 U.S.C. § 2675, on its face.

C. *Title VII Is the Exclusive Remedy for Injunctive Relief Based on Claims of Religious Discrimination in Federal Employment. Therefore, the Court will Dismiss Plaintiff's Religious Discrimination Claims Because Plaintiff has Neither Asserted nor Complied with Title VII.*

 The defendants contend that any request for injunctive relief from religious discrimination in the federal government must be based upon a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16. Plaintiff has neither alleged Title VII nor exhausted the administrative remedies prescribed thereunder. In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that Title VII is the exclusive judicial remedy for religious discrimination in federal employment. *See League of United Latin American Citizens v. Hampton*, 163 U.S. App.D.C. 283, 501 F.2d 843 (1974).

Nothing in the recent decision of *Neely v. Blumenthal*, (D.D.C.1978), 458 F.Supp. 945 is to the contrary. There, the court held that Title VII does not preclude a suit for *damages against the government officials* who allegedly discriminated. However, the court explicitly acknowledged the exclusivity of Title VII when the action is one for *injunctive relief against officials,* as is the case here.

Unlike in this case, the remedies sought in *Richardson* [*v. Wiley*, 186 U.S.App.D.C. 309, 569 F.2d 140 (1977)] were all official injunctive remedies. So, in holding that plaintiff was barred from obtaining injunctive relief on any of his non-Title VII theories, the Court of Appeals did not decide the question of *Brown's* preemptive effect on constitutional damage causes of action. *The only application Richardson can have in the case at bar is with regard to plaintiff's first amendment claim for injunctive relief also available under Title VII.* Accordingly, based on the *Richardson* decision, the Court will dismiss plaintiff's constitutional claim for injunctive remedies.

At 458 F.Supp. at 955 n.17. Thus, this Court must similarly dismiss plaintiff's request for injunctive relief as to religious discrimination in employment by federal officials.

 Plaintiff has argued that the exclusivity of Title VII should not bar its claims here because plaintiff has not sought the remedies that Title VII was designed to invoke. Plaintiff, seeking a mere injunction, points out that, here, "there is no claim for hiring or reinstating individuals or for back pay, or for an affirmative plan to eliminate the vestiges of past discrimination." (Plaintiff's Opposition to Defendants' Motion to Dismiss at 11, August 30, 1977, in C.A. No. 77–0175, incorporated by reference into this case by Plaintiff's Opposition to Defendants' Motion to Dismiss at 23, February 2, 1978) Therefore, according to plaintiff's argument, it need not rely upon Title VII. This argument, however, overlooks the terms of Title VII, which authorizes all "appropriate remedies," 42 U.S.C. § 2000e–16. Not only is an injunction an "appropriate remedy," but Title VII

was designed for the simple purpose of *enjoining* unlawful employment practices. *See* 42 U.S.C. § 2000e–5(g). Thus, the relief plaintiff seeks here, an injunction, is available under Title VII. Consequently, because plaintiff has not alleged nor complied with Title VII, and because Title VII is the exclusive independent remedy for claims of religious discrimination in the federal sector, plaintiff's claims for relief from such discrimination are barred herein.

D. *It Is Premature to Now Decide Whether the Remedy of Expungement Will Be Available in This Case; Further Discovery and Proof Are Necessary.*

■ The defendants move to dismiss plaintiff's suit for expungement of all records referring to plaintiff because plaintiff has failed to "specify the nature of the items it seeks to have expunged and the harm caused by their continued retention." (Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 27, February 13, 1978) However, the Court is empowered to order the expungement of government records where necessary to vindicate rights secured by the Constitution or by statute. *See Chastain v. Kelley*, 167 U.S.App.D.C. 11, 14, 510 F.2d 1232, 1235 (1975); *Menard v. Saxbe*, 162 U.S.App.D.C. 284, 290, 498 F.2d 1017, 1023 (1974); *Sullivan v. Murphy*, 156 U.S.App. D.C. 28, 56, 478 F.2d 938, 966, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *Washington Mobilization Committee v. Cullinane*, 400 F.Supp. 186, 219 (D.D. C.1975), *aff'd*, 184 U.S.App.D.C. 215, 229, 566 F.2d 107, 121 (1977). Therefore, it is too premature to rule upon defendants' instant argument. Only after discovery and proof can the Court decide which specific records, if any, should be expunged.

E. *Plaintiff Has Stated a Claim Upon Which Relief Can be Granted in its Allegations Regarding Surveillance, Informants, and the Involvement of Foreign Officials.*

The defendants have moved to dismiss three other independent claims made by the plaintiff. Each will be dealt with seriatim.

■ First, the defendants claim that plaintiff's contention that it "was the subject of surveillance and the object of informant interest by the government" fails to state a claim without more harm being alleged than a "subjective chill." (Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 28, February 13, 1978) *See Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The Court finds the allegations herein more specific than those in *Laird*, and more akin to those in *Socialist Workers Party v. Attorney General of United States*, 419 U.S. 1314, 95 S.Ct. 425, 42 L.Ed.2d 627 (1974). In *Socialist Workers Party*, the Court remarked:

> In this case, the allegations are much more specific [than in *Laird*]: the applicants have complained that the challenged investigative activity will have the concrete effects of dissuading some YSA delegates from participating actively in the convention and leading to possible loss of employment for those who are identified as being in attendance. Whether the claimed "chill" is substantial or not is still subject to question, but that is a matter to be reached on the merits, not as a threshold jurisdictional question.

419 U.S. at 1318, 95 S.Ct. at 428. Similarly, plaintiff in this case has asserted that the actions of the defendants have had the effect, *inter alia*, of: interfering with the lawful associational and religious activities of the plaintiff (Complaint, ¶ 31); disrupting the plaintiff's organization and its growth (Complaint, ¶ 33, ¶ 35); harassing and intimidating practitioners of plaintiff and denying of government benefits (Complaint, ¶ 44); and preventing the free practicing of religious beliefs and other associational activities, as well as deterring supporters from joining the plaintiff (Complaint, ¶ 50). These are more than a "subjective chill" and, whether they are substantial can only be decided at a later time. 419 U.S. at 1318, 95 S.Ct. 425. Therefore, the Court will deny defendants' motion to dismiss on this ground.

■ Second, defendants claim that plaintiff's charge that the government used informants or infiltrators does not state a claim upon which relief can be granted. The complaint, however, also charges that these law enforcement techniques "interfere with the lawful associational and religious activities" of plaintiff. (Complaint, ¶ 31) While law enforcement officials do have a right to use informers, there are limits to its use.

> The use of informers and infiltrators by itself does not give rise to any claim of violation of constitutional rights. However, those so engaged may not overstep constitutional bounds: the Bill of Rights protects individuals against excesses and abuses in such activities. . . . Plaintiffs' challenge here is not to the use of informers and undercover agents as such, but to conduct of SIS and its agents that allegedly exceeds permissible limits and goes far beyond legitimate surveillance activities with the intent and purpose to invade their constitutional right of free association and communication.

*Handschu v. Special Services Division*, 349 F.Supp. 766, 769–70 (S.D.N.Y.1972) (footnotes omitted). Under the teaching of *Handschu*, plaintiff's allegation is sufficient to overcome defendants' motion to dismiss.

■ Third, defendants argue that plaintiff failed to state a claim when it asserted violations based on alleged actions taken wholly by foreign governments, or organs thereof on foreign soil. For this proposition, defendants rely upon *Stonehill v. United States*, 405 F.2d 738 (9th Cir. 1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969), and *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144 (D.D.C. 1976). Both are inapposite. In *Stonehill*, the court held that *raids by foreign officials* did not give rise to a cause of action unless the United States substantially participated in the raids. 405 F.2d at 743. In *Berlin Democratic Club*, the court held *wiretaps carried out by foreign officials* are not ac-

tionable unless the United States was a joint venturer in the endeavor. 410 F.Supp. at 154. Here, however, plaintiff seeks an injunction [10] to prevent *the defendants from releasing* allegedly false and derogatory information about plaintiff to other governments. The action sought to be restrained is action that this Court has power to affect and, therefore, the reason for the holdings of *Stonehill* and *Berlin Democratic Club*—that courts cannot require foreign officials to abide by our Constitution on foreign soil—is inapplicable here. Accordingly, the Court will not dismiss these claims of the plaintiff at this time.

## V. SUMMARY

There are two motions before the Court. In plaintiff's motion for class certification, plaintiff sought to represent the class of "all Churches and Missions of the Church of Scientology located in the United States." The Court will conditionally certify this case as a class action for the purpose of injunctive relief pursuant to Fed.R.Civ.P. 23(b)(2). However, because each member of the class must exhaust its administrative remedies under the FTCA, and because this was not done here, the Court will *not* certify the class for purposes of damage relief.

In defendants' motion to dismiss, several arguments were advanced. The defendants argued that the complaint failed to satisfy Fed.R.Civ.P. 8(a) because, defendants contend, the complaint does not present a plain statement of the claims asserted by the plaintiff. The Court finds the complaint sufficient but will allow the defendants. to renew their motion to dismiss on this basis at a later date after the plaintiff has had a chance to conduct some discovery and can precisely and concisely specify its allegations. The defendants next argued that the Court lacks jurisdiction over the FTCA claims because plaintiff failed to properly exhaust its administrative remedies. The Court finds that the plaintiff has not properly exhausted because it has not filed a

---

**10.** Plaintiff cannot obtain damages for either the United States' actions nor the actions of the foreign officials because plaintiff failed to exhaust its administrative remedies. *See* part IV B, *supra*.

Form 95 that is sufficiently specific and because the plaintiff did not respond to the requests of two agencies for more information. Thus, all of plaintiff's claims for damages, whether premised upon a *Bivens* action or 42 U.S.C. § 1985(3) as a basis under the FTCA, will be dismissed. The defendants next argued that the plaintiff's claim for discrimination in federal employment on the basis of religion is barred by the exclusivity of Title VII. The Court agrees, and will therefore dismiss the plaintiff's claim for relief from religious discrimination in federal employment. Moreover, the defendants argued that plaintiff has failed to state a claim for expungement. The Court finds defendants' argument premature because the expungement issue can only be decided after the merits are determined. The defendants argued also that plaintiff has failed to state a claim regarding surveillance and informants. The Court finds that plaintiff's claim alleges more than a "subjective chill," and, therefore, plaintiff's claim surpasses a motion to dismiss. Finally, defendants argued that the plaintiff has failed to state a claim for the actions of foreign governments. The Court finds that because plaintiff seeks only to enjoin the actions of United States officials, not the actions of foreign officials on foreign soil, plaintiff has stated a claim upon which relief may be granted.

Accordingly, the Court will grant plaintiff's motion for class certification and conditionally certify, for purposes of injunctive relief only, the class of "all Churches and Missions of the Church of Scientology located in the United States," pursuant to Fed. R.Civ.P. 23(b)(2). Furthermore, the Court will grant defendants' motion to dismiss to the extent that this Court lacks jurisdiction over plaintiff's claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and to the extent that plaintiff's claims seek injunctive relief from religious discrimination in federal employment.

An Order in accordance with the foregoing will be issued of even date herewith.