Theodore L. LOMBARD, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 81–0425.

United States District Court, District of Columbia.

Sept. 30, 1981.

Peter R. Kolker, Washington, D. C., for plaintiffs.

Bruce E. Titus and Deborah C. Ratner, U. S. Dept. of Justice, Washington, D. C., for Federal defendants.

James C. Gregg and David M. Moore, Washington, D. C., for defendants Los Alamos Nat. Laboratory and University of California.

## MEMORANDUM

GASCH, District Judge.

This is a suit for 35 million dollars in compensatory and punitive damages against the United States, various federal agencies, and eight individual defendants in their official and individual capacities. The plaintiffs, Theodore Lombard, his wife, and four children, allege that Mr. Lombard, during the course of his service in the United States Army, was exposed to radioactive substances without his knowledge or consent. As a result of this exposure, Mr. Lombard allegedly suffers various types of physical injuries, as well as somatic and genetic damage which he has passed to his children.[1] Mr. Lombard also alleges that after his discharge from the Army the defendants failed to warn him of the radiation exposure and its potential consequences. The case is before the Court on the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and the defendants' motion to strike the named individuals from the complaint.

DISCUSSION.

A. THE GOVERNMENT DEFENDANTS.

The complaint consists of four counts: in Count I Theodore Lombard alleges that the defendants are liable to him under the Federal Tort Claims Act ("FTCA") for exposing him to the radioactive materials and for willfully concealing information about the health risks of that exposure; in Count II Theodore Lombard alleges that the defendants are liable for the exposure and subsequent concealment under the First, Fifth, Ninth, and Tenth Amendments to the United States Constitution and under 42 U.S.C.

---

1. The plaintiffs claim that Mr. Lombard was exposed, by skin contact, inhalation, or ingestion to radioactive materials while he was in the Army during 1944 through 1946 and stationed at Los Alamos, New Mexico. This expo- sure resulted from Lombard's participation in the transportation and barehanded handling of radioactive materials while he was assigned to the atomic bomb project.

§ 1985(3); in Count III all plaintiffs, except Theodore Lombard, allege that the defendants are liable under the FTCA; in Count IV all plaintiffs, except Thomas Lombard, allege the defendants are liable under the same constitutional and statutory provisions raised in Count II.

A single legal issue, the scope of the doctrine set out in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), determines whether this case can proceed against the United States, the named federal agencies, and the named individual defendants in their representative capacities. In *Feres*, the Supreme Court stated that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

### 1. *Feres Bars Liability to Theodore Lombard.*

■ Count I of the complaint alleges that the defendants' failure to protect Theodore Lombard from the radiation makes them jointly and severally liable under the FTCA for the resulting injuries. Complaint, ¶ 38. Count II alleges similar liability under a constitutional theory. *Id.* ¶¶ 44–48. Both of these claims are barred by the doctrine of *Feres*. Any physical injury to Mr. Lombard caused by the radiation arose out of his activities incident to military service. *Feres* explicitly bars such actions under the FTCA. 340 U.S. at 146, 71 S.Ct. at 159; *accord, e.g., Stencil Aero Engineering Corp. v. United States*, 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977); *Thornwell v. United States*, 471 F.Supp. 344, 347 (D.D.C.1979); *Misko v. United States*, 453 F.Supp. 513, 514 (D.D.C.1978). Moreover, the courts have repeatedly read *Feres* to bar constitutional tort claims against the government. *See, e.g., Thornwell, supra*, 471 F.Supp. at 348; *Misko, supra*, 453 F.Supp. at 516; *Rotko v. Abrams*, 338 F.Supp. 46, 47 (D.Conn.1971), *aff'd per cu-*

*riam*, 455 F.2d 992 (2d Cir. 1972). Consequently, any claim against the United States for injury to Mr. Lombard during his military service in 1944–46 is barred by the doctrine of sovereign immunity, and this Court does not have subject matter jurisdiction over these claims.

The plaintiffs try to circumvent *Feres* by alleging that the government's failure to warn Mr. Lombard, after his discharge from military service, of the possibility and extent of his radiation-caused injuries is a separate tort. This contention seems to be based on language in Judge Richey's opinion in *Thornwell*:

> the military may commit an intentional act and then negligently fail to protect a soldier turned civilian from the dire consequences which will flow from the original wrong. This Court holds that, under such circumstances, the injured civilian may have a valid claim against the tortfeasors. The later negligence is a separate wrong, a new act or omission occurring after civilian status is attained . . . .

*Thornwell, supra*, 471 F.Supp. at 352.[2]

In *Thornwell*, the Court recognized that its theory of separate liability for a post-discharge failure to warn might lead to "the possibility that artful pleading may be employed to elevate one continuing act of negligence into separate wrongs." *Thornwell, supra*, 471 F.Supp. at 352. Indeed, the present case is factually distinguishable from *Thornwell*. In *Thornwell*, the original tort was "intentional," *id.* at 348, the drugging of the plaintiff with lysergic acid diethylamide (LSD) as a part of a covert experiment. *Id.* at 346. Here, on the other hand, the exposure of Mr. Lombard occurred incident to his regular military duties as "a result of the negligence" of the defendants. Complaint, ¶¶ 22, 34. This would suggest that the actions complained of are merely one continuing act of negligence. Thus, even under Judge Richey's formulation, liability would be barred by *Feres*.

---

**2.** This theory has not been accepted by all courts. For instance, it was explicitly rejected in *Schnurman v. United States*, 490 F.Supp. 429, 437 (E.D.Va.1980), as "inconsistent . . . with the language and rationale of Feres." *Accord, Kelly v. United States*, 512 F.Supp. 356, 361 (E.D.Pa.1981).

Other courts have refused to characterize a sequence of events similar to that in this case as two separate torts. For instance, in *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 762 at 779 (E.D.N.Y.1980), Judge Pratt described the government's failure to warn Vietnam veterans exposed to the defoliant Agent Orange as a single negligent act with effects that lingered after discharge. Similarly, in *Reynolds v. Department of the Navy*, C–2–75–427, Order, at 2 (S.D.Ohio, Feb. 8, 1976), the Court dismissed a complaint that alleged government liability for post-discharge failure to warn about radiation exposure because "any duty to warn must arise out of events which occurred during and incident to . . . . military service." *Accord, Kelly v. United States, supra*, 512 F.Supp. at 361. Because the injuries to Mr. Lombard arose out of his exposure to radiation during his military service, the failure to warn him does not constitute a separate tort. Therefore, *Feres* bars this Court from allowing Mr. Lombard's claim to proceed.

### 2. The Claims of Theodore Lombard's Wife and Children are also Barred by Feres.

Count III of the complaint alleges government liability under the FTCA to the wife and children of Theodore Lombard for mutagenic defects in the children allegedly caused by Theodore Lombard's exposure to radiation and for the mental anguish caused by these defects. Count IV alleges the same liability on a constitutional theory. Because none of these plaintiffs were in the military, their claims are more problematical than those of Mr. Lombard.

The issue of government liability for genetic damages to the children of servicemen exposed to hazardous substances has repeatedly been presented to federal courts in recent years, and the courts have uniformly held that *Feres* barred liability. In *Monaco v. United States*, C79–0860SW, *slip op.* at 3 (N.D.Cal. Oct. 31, 1979), the Court summarily held that even though the plaintiff had never been a member of the military, her injuries had their "genesis" in her father's exposure to radiation sustained "incident to the performance of military service." Consequently, the suit was barred by *Feres*. The Court found the child's injury to be "directly related to and [to] arise out of the injuries sustained by her father at the time he was a member of the United States Army." *Id.* at 4.

The theory developed in *Monaco* was relied on by the Court in the *Agent Orange* case to dismiss claims by the children of servicemen allegedly suffering genetic damage as a result of their fathers' exposure to the defoliant in Vietnam. *In re "Agent Orange" Product Liability Litigation*, MDL No. 381, Pretrial Order No. 26, at 30 (E.D.N.Y. Dec. 26, 1980). After repeating the rationale for dismissing the claim in *Monaco*, the court added: "To hold otherwise might open the door for governmental liability to countless generations of claimants having ever diminishing genetic relationship to the person actually injured." *Id.* at 31.

A closer examination of the factors outlined ·in *Feres* suggests that that result in *Monaco* and *Agent Orange* is correct. The FTCA represents "the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." *Feres, supra*, 340 U.S. at 139, 71 S.Ct. at 157. Yet the effect of the Act is not "to visit the Government with novel and unprecedented liabilities." *Id.* at 142, 71 S.Ct. at 157. As the Supreme Court has pointed out, three considerations underlie the *Feres* doctrine:

First, the relationship between the government and members of its Armed Forces is " 'distinctly federal in character,' " . . . it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor . . . namely,

"[t]he particular and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ."

*Stencil Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977) (citations omitted; brackets in original).

■ When these factors are applied to the Lombards' allegations, it is clear that *Feres* bars this suit. The claims are "distinctly federal in character," for they are no different from claims by the descendants of soldiers who might be exposed to radiation on the battlefield during some future limited nuclear war, claims surely barred by *Feres.* If the allegations in the complaint are true, there is a direct causal link between what happened to Mr. Lombard during his military service and the claims now advanced by his children. "But for" the military service there would be no claim. To allow this suit to proceed, when a suit by the soldier himself could not, makes little sense, for it would undercut the need to maintain a single standard of government liability for its wide ranging military operations.[3]

Moreover, the causal link between the alleged injuries of the children and Mr. Lombard's military service implicate the need to maintain military discipline. If the threat of suit for the direct consequences of military orders would have an adverse effect on military discipline, the threat of suit for indirect consequences, such as those in this case, would have a similar effect.

Only the second element of *Feres*, the existence of alternative avenues of relief for servicemen, supports the plaintiffs' position in this case. In *Feres*, the plaintiff had an alternative to a tort suit, for he could be compensated under the Soldiers and Sailors Civil Relief Act. 340 U.S. at 145 & n.13, 71

S.Ct. at 158 & n.13. The Lombards claim that they have no such remedy in this case. However, when the Supreme Court discussed this factor in *Stencil Aero Engineering*, it emphasized not only the plaintiff's interest in compensation but also the government's interest in limiting liability. 431 U.S. at 673, 97 S.Ct. at 2058. Conceivably, the government's liability for damage resulting from exposure to radiation has no limit because such exposure can affect generations yet to be born. Thus, this factor to some extent cuts both ways in this case.

If governmental liability for military operations is to be extended, it is for Congress, not the courts, to fashion the remedy. The Court will not carve out an exception to sovereign immunity in a situation where the rationale underlying *Feres* does not clearly mandate such an extraordinary step.

### B. LIABILITY OF THE NAMED INDIVIDUAL DEFENDANTS.

The plaintiffs name eight individual defendants as liable in their individual and official capacities for having "fraudulently concealed information concerning the increased risk of somatic and chromosomal injury . . . ." Complaint, ¶ 35. This is alleged despite the fact that plaintiffs filed an administrative claim on this matter on June 5, 1979, *id.* ¶ 21, one year and a half before seven of the eight individual defendants took office under the Reagan administration.

### 1. *Liability Under the FTCA.*

■ In *Feres* the Supreme Court stated: "We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving." 340 U.S. at 141, 71 S.Ct. at 156. The Third Circuit Court of Appeals has relied on this language to dismiss suits against individual named defendants under the FTCA. *Bailey v. DeQuevedo*, 375 F.2d 72, 73 (3d Cir.), *cert. denied*, 389 U.S. 923, 88 S.Ct. 247, 19

---

**3.** Although *Feres* applied the single standard of liability factor to bar actions under various

state laws, the factor applies by analogy here.

L.Ed.2d 274 (1967). The rationale for this holding seems to be that military discipline will break down if one soldier can sue another for his negligent acts. *Id.* at 74. This reasoning was followed in *Thornwell v. United States, supra,* 471 F.Supp. at 347, where the Court dismissed claims for negligence under FTCA against individual defendants because of *Feres* immunity. Similarly, *Feres* dictates the dismissal of those individual defendants who are officials outside the military (*e.g.,* James B. Edwards, Jr., Secretary of Energy) if the claim arose out of Mr. Lombard's military service. *See Kelly v. United States,* 512 F.Supp. 356, 361 (E.D.Pa.1981). Thus, the claims under the FTCA against these individual defendants, so far as the cause of action arises out of the performance of their duties, must be dismissed.

### C. THE CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.

 The plaintiffs also allege a cause of action against these defendants in their individual capacities for a conspiracy to violate the plaintiffs' civil rights under 42 U.S.C. § 1985(3).[4] The complaint alleges: "Defendants have willfully and intentionally caused grave injury to the health of Mr. Lombard and consequently to the health of his wife and his offspring and have conspired to conceal from plaintiffs the fact that such injury has taken place as a result of defendants' acts and omissions in exposing Mr. Lombard to radioactive materials . . . ." Complaint, ¶ 46. The complaint makes other broad and vague allegations of a "conspiracy" to violate plaintiffs' constitutional rights. Yet none of the individual defendants are named in the body of the complaint, nor is any specific act of any of the defendants pointed out as part of the conspiracy to deny Mr. Lombard information about his exposure to radiation. Indeed, plaintiffs cannot make this showing since they obviously knew of the exposure when their administrative claims were filed. These claims were filed before most of the defendants even assumed office.

The Federal Rules "do not require a claimant to act out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Founding Church of Scientology v. Director, Federal Bureau of Investigation,* 459 F.Supp. 748, 756 (D.D.C. 1978). Despite this liberal standard, allegations of conspiracy are insufficient unless amplified by "specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977). Thus, a complaint that alleges conspiracy to deny individuals of their constitutional rights must

> [set]. forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

*Hoffman v. Halden,* 268 F.2d 280, 295 (9th Cir. 1959), *quoted in Martin Hodas, East Coast Cinematics v. Lindsay,* 431 F.Supp. 637, 643–44 (S.D.N.Y.1977), and *Vulcan Society v. Fire Dept. of White Plains,* 82

---

4. Plaintiffs urge that the Supreme Court's decision in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), requires the Court to reexamine the *Feres* doctrine. In *Carlson* the Court held that a *Bivens* action (*Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) for a violation of a plaintiff's civil rights would lie against individual defendants even though the FTCA also provided a cause of action against the United States. *Id.* at 19–20, 100 S.Ct. at 1472. The plaintiffs argue that because the FTCA is not the exclusive remedy for torts by governmental officials, *Feres* should not apply to suits for constitutional violations by federal officials in their individual or official capacities. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, at 4–8. However, the Court in *Carlson* made it clear that a *Bivens* action would be defeated "when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress.'" 446 U.S. at 18, 100 S.Ct. at 1471 (quoting *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004). The important doctrine set out in *Feres* does more than counsel hesitation in this case. Thus, even if the complaint set out enough facts to withstand a motion to strike, the plaintiffs would not prevail on this theory.

F.R.D. 379 (S.D.N.Y.1979). This standard has not been met by the complaint in this case, and the individual defendants must therefore be stricken from it.

CONCLUSION.

The individual defendants must be stricken from the complaint, and the complaint must be dismissed for lack of subject matter jurisdiction.