AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI, INC., Delta Ministry, Owen Brooks, and Ken Lawrence, on Behalf of Themselves and a Class of Others, Plaintiffs,

v.

Ray MABUS, as Governor of the State of Mississippi, et al., Defendants.[1]

Civ. A. No. J77–0047(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 27, 1989.

1. This suit was originally brought against Governor Cliff Finch, Attorney General A.F. Sumner, Secretary of State Heber Ladner, Commissioner of Public Safety James Finch, and Sovereignty Commission Director W. Webb Burke. As there is no longer a claim against any defendant in an individual capacity, the Complaint has been amended through the operation of Federal Rule of Civil Procedure 25. The Defendants, represented by the Attorney General of Mississippi, are collectively referred to as "the State."

Shirley Payne, Jackson, Miss., Jack D. Novik, American Civil Liberties Union, New York City, Ronald W. Lewis, Oxford, Miss., and Dixon L. Pyles, Jackson, Miss., for plaintiffs.

Stephen J. Kirchmayr, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on cross-motions for summary judgment, and motions of the Plaintiffs to amend complaint and for interim relief. The action arises from the activities of an agency of the State of Mississippi, the State Sovereignty Commission. The Plaintiffs claim that the Commission violated their constitutional rights, that the sealing of records of these violations further derogates their rights, and that they are entitled to declaratory and injunctive relief.

The Court has reviewed the extensive pleadings and exhibits filed by the parties and heard the argument of counsel and finds that no genuine issue of material fact exists. For reasons set forth below, the Court will grant summary judgment and permanent injunctive relief to the Plaintiffs.

## I. FINDINGS

The following facts are established by the record and are findings by this Court:

### A. Creation of the Sovereignty Commission

Chapter 365 of the Laws of Mississippi, 1956, was passed by the Mississippi legislature and signed into law by Governor J.P. Coleman on March 29, 1956. *codified,* Miss.Code Ann. § 3-1-1, *et seq.* (1972); Miss.Code Ann. § 9028-31 *et seq.* (1942, 1956 Supp.) ("1956 statute"). Under the statute, the Governor, Lieutenant Governor, state Attorney General, Speaker of the House of Representatives, and eight appointed citizens served as members of the State Sovereignty Commission. ("Commission"). The purposes of the Commission were described by euphemism:

> It shall be the duty of this Commission to do and perform any and all acts and things necessary and proper to protect the sovereignty of the State of Mississippi, and her sister states, from encroachment thereon by the Federal Government or any branch, department, or agency thereof; and to resist the usurpation of the rights and powers reserved to this state and our sister states by the Federal Government or any branch, department or agency thereof.

Miss.Code Ann. § 3-1-11 (1972). However, the understood purpose of the Commission was to maintain racial segregation in the South [2] despite orders for its demise by the United States Supreme Court.[3] The Commission was to cooperate with other states to achieve this end. It was given the power to subpoena witnesses and documents under threat of imprisonment, and a witness was liable under the statute not only to punishment by a state Chancellor for perjury or contempt but also to public recrimination for failure to testify. However, any witness before the Commission was immune from prosecution for any act which related to his testimony or evidence. All officers of the State and its subdivisions, and of the institutions of higher learning, were required to "render such aid and assistance as may be requested of them by the Commission." The Commission was to employ "such legal, professional, expert, secretarial, clerical and other help deemed necessary and proper" to carry out its objectives. Miss.Code Ann. §§ 3-1-13 to 13-1-27 (1972).

Of particular note in this cause, the Commission was "to keep full and complete minutes and records of all its proceedings and actions, which said minutes and records shall be open to the inspection of any member of the legislature ..." Miss. Code Ann. § 3-1-15 (1972). Finally, the legislature delegated broad powers to the Commission to enforce the objectives of the statute. "The Commission is ... endowed with full power and authority to do and perform any and all acts and things deemed necessary and proper to carry out the objectives and purposes of this chapter." Miss.Code Ann. § 3-1-33 (1972).

### B. Activities of the Sovereignty Commission

The Commission performed three general tasks: it gathered information concerning civil rights activists, it conducted activities to countermine the activities of desegregationists, and it directed public relations. The daily activities of the Commission were coordinated by an Executive Director, who managed a small staff. Personnel policy and the targets of some investigations were set either by the Governor, his representative, or the Director of the Commission.

The Commission hired agents to investigate civil rights rallies and marches as well

---

**2.** The minutes of the Commission, speeches made by Commission members representing the Commission, and actions of investigators and officers make this purpose abundantly clear. While these are described below in part, this Court is one of law and not of history. The evidence introduced by the Defendants and the twelve-volume exhibit submitted by the Plaintiffs have been considered in detail, but the Court will now make only such findings of fact necessary to reach a decision on the issues presently at bar.

**3.** *See Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1956).

as the individuals who sponsored voter registration drives and sit-ins. Some of these agents were spies, paid to infiltrate organizations and report details of organizational plans and of the lives of members, and some were full-time employees who reported rumors and observations in various towns. The Commission also sought information from law enforcement agencies out of state. Even so, much of the information gathered came from newspaper reports.

The Commission used several patterns in attempting to thwart desegregationists. The first was simply to warn local officials prior to boycotts, meetings, and voter registration drives, leaving the response to the local authority. The Commission also harassed individuals who assisted organizations promoting desegregation or voter registration. In some instances, the Commission would suggest job actions to employers, who would fire the targeted moderate or activist. The Commission caused applications for commissions as notaries public to be denied. The Commission maintained and distributed lists of people reported to be supporters of civil rights organizations or who supported public measures toward moderation or desegregation. These lists were made available to other law enforcement agencies.

The Commission's public relations program was twofold: to show that the State was peaceful and to discredit reports of the dissatisfaction of Blacks in segregated Mississippi. This program included promoting the establishment of welcome centers at state lines as well as sponsoring speakers and movies and issuing promotional literature. In the last years of the life of the Commission, much of its activities were directed away from intervention in civil rights movements and toward the more narrow ends of preventing violence.

### C. Deactivation of the Commission and Storage of the Files

On April 17, 1973, Governor William Waller vetoed the bill which would fund the Commission. He stated then that the Commission

performs no real indispensable services to the people of this State. Its investigative work can and should be done by either the Department of Public Safety or the Attorney General's Office. Both departments now perform services overlapping the scope of this agency. This veto will add economy in State government and dispose of one State agency which is no longer needed.

1973 *Miss. House J.* 1278. Funding ended on June 30, 1973, and there is no evidence of Commission activity after that date.

House Bill 276 was introduced in the Mississippi Legislature on January 4, 1977. It provided for the repeal of the 1956 statute and that

[t]he files and equipment of the State Sovereignty Commission are hereby transferred to the control of the Department of Public Safety. The Department of Public Safety shall use said files in the furtherance of the activities of said department.

A committee substitute was adopted which provided that the files should be placed in the custody of the Secretary of State and "immediately sealed and impounded" until July 1, 2027, when they would become public records in the care of the Department of Archives and History. The substitute added language to continue witness immunity as under the 1956 statute.

On the floor, an amendment was offered which would direct the Secretary of State to destroy the files, which initially lost by 48 votes to 64. 1977 *Miss. House J.* 158. Another amendment was offered which would have required the Secretary of State to

prepare an index of the names of individuals and organizations named or referred to in the files. After this index is compiled the parties so named shall be notified (sic) this fact by mail at the last known address as disclosed by the files.... Any individual or organization named in the files of the Sovereignty Commission shall upon demand be given copies of such records as will fairly indicate the context in which the name was

so used in each place where it appears ...

1977 *Miss. House J.* 159. This amendment failed by a vote of 25 to 91. After this amendment failed, the first amendment was reconsidered and passed 87 votes to 31. As amended, the bill passed the House by 103 votes to 16. Section 2 of the bill as passed then read, "The Secretary of State is hereby directed to destroy the said files in their entirety."

Plaintiffs filed their Complaint on February 18, 1988. A Motion for Preliminary Injunction followed on February 22, and for a Temporary Restraining Order on February 15. The Temporary Restraining Order was granted on February 28, restraining the Defendants from "destroying, altering, concealing, or otherwise disposing of the records."

On March 2, the Senate adopted a new committee substitute, which passed by a vote of 35 to 9. The House concurred in the amendments by 110 votes to 7, and the bill was signed into law on March 4, 1977, by Governor Cliff Finch. Section One of this law provides that the sections of the Mississippi Code pertaining to the Commission are repealed. Further,

> Section 2. The files and equipment of the State Sovereignty Commission are hereby placed in the custody of the Department of Archives and History. Said files shall be immediately sealed, impounded, and maintained as confidential files.... On July 1, 2027, such files shall become public records under the custody and control of the Department of Archives and History.
>
> Section 3. Any person heretofore sworn and examined as a witness before the Sovereignty Commission without procurement or contrivance on his part shall not be held to answer criminally or be subject to any penalty or forfeiture for any fact or act touching upon that which he was required to testify; nor shall any statement made or book, paper or document produced by any such witness be competent evidence in any criminal proceeding against such witness other than for perjury in delivering his evidence.

> Section 4. Any person who shall willfully break any seal containing the impounded files of the State Sovereignty Commission, or willfully examine, divulge, disseminate, alter, remove, or destroy said files prior to July 1, 2027, shall, upon conviction, be fined not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00) or imprisoned for not more than three (3) years, or punished by both such fine and imprisonment.

*codified* at Miss.Code Ann. § 39–5–61, *et seq.* ("1977 statute").

The Court finds that two distinct policies are evident in this legislative history: to protect the privacy of those whose names were in the files and to limit liability of the Commission and its agents. The Court notes both that all provisions which would preclude the Plaintiffs from access were introduced at the time of filing of this suit and that the only measure which could reasonably have allowed access was defeated in the House.

Pursuant to the 1956 statute, the Commission maintained records of its meetings and activities throughout the period of its existence. These records filled six filing cabinets when transferred to the Department of Archives and History under the 1977 statute. The records include meeting minutes, reports by agents of investigations and conversations with informants, reports by informants, letters from individuals and state officers to Commission staff, letters from Commission staff to Commission members and other agencies, letters to private employers and citizens, press releases, and speeches. The bulk of the files are newspaper clippings. Perhaps three-quarters of the material is already in public circulation from other sources.

The other quarter of the material includes correspondence to employers urging them to fire employees who advocated desegregation, correspondence recommending the denial of commissions as notaries public for applicants who supported civil rights groups, reports of information gathered through warrantless searches on private property, lists distributed to local law

enforcement agencies of people suspected of being civil rights leaders or workers, and reports of money spent to support informants, press relations and investigations. Due to the content of some investigative reports in the files, some individuals are described and discussed but not named. The identity of these people would be evident to a person with knowledge of the areas of such reports at the time of the report, but would not be known to an archivist today.

These files are not complete. A memo in the record establishes that in 1965, the Commission director ordered the destruction of all files which might show interference by Commission agents with voter registration. There are other gaps which indicate that files have been lost, pilfered or destroyed.

### D. Procedural History of this Action

This case was filed on February 18, 1977, against various state officers. The Plaintiffs sought to bring a class action on behalf of all individuals, non-profit corporations and associations who "have been and are subjected to the Defendants' unlawful governmental intrusions" seeking a declaration that the Defendants had violated the constitutional rights of class members and an injunction against further intrusion. The American Civil Liberties Union of Mississippi, Inc., ("ACLU") and Delta Ministry also sought damages from the defendants individually.

Pursuant to an Order requiring a more definite statement, the Plaintiffs filed an Amended Complaint on April 14, 1977. This pleading detailed the alleged intrusions of the constitutionally protected activities of the Plaintiffs, including causing state agents to disrupt lawful activities, entering premises of the Plaintiffs and seizing property without a warrant, and both gathering and disseminating "unlawful intelligence data" concerning these activities. The Plaintiffs claimed that these activities violated rights protected under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the U.S. Constitution.

Following extensive discovery, a former judge of this Court determined that the court lacked authority to require discovery or grant relief due to the 1977 statute and the Eleventh Amendment. Class certification was denied and the case was dismissed on April 27, 1979. On appeal, the United States Court of Appeals for the Fifth Circuit vacated the denial of class certification and held that the 1977 statute did not create an evidentiary privilege compelling respect by this Court in this case. *American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d 1336 (1981).

A Supplemental Complaint was filed with leave of the Court on November 8, 1984. The Plaintiffs then sought a declaratory judgment that the Defendants had violated and continued to violate the constitutional rights of the named Plaintiffs and class members. The Plaintiffs sought a permanent injunction "to restrain, prohibit, and prevent Defendants' unlawful governmental activities," and an injunction "requiring Defendants ...to afford Plaintiffs and members of their class adequate notice, hearing and the effective opportunity to rebut all information and allegations compiled, maintained and/or published by them," as well as damages from the original individual Defendants and attorneys' fees. The State answered, claiming that the Court has no jurisdiction over the subject matter, that the Complaint fails to state a cause of action, that there is no case or controversy, that the case is barred by the statute of limitations, and that the individual defendants were immune from liability. A motion is now pending to allow the Plaintiffs to supplement their complaint with the claims of their cross-motion for summary judgment.

This Court certified the Plaintiff class as requested by the Plaintiffs on August 18, 1982. The class is defined as

all natural persons, all not-for-profit associations and all unincorporated associations who, in or around the State of Mississippi, have been or continue to be subject to investigation, surveillance, intrusions or the dissemination of false and misleading information by agencies of

the State of Mississippi or those acting in concert with said agencies.

At the time the class was certified, the Court noted that the class definition was appropriate and its cause was not moot under the principles announced in *Cruz v. Hauck,* 627 F.2d 710 (5th Cir.1980).

In 1987, the Court entered an Order to subdivide the class to assure its adequate representation. One subclass, the "access Plaintiffs," is composed of those members of the class who now desire unlimited public access to records sealed pursuant to Mississippi Code Section 39–5–61. The other subclass, the "privacy Plaintiffs," is composed of those members of the class who now desire access to the sealed records for those persons mentioned in the records but who wish no further access to the record by third parties without the prior permission of those described in that particular record. Although represented by separate counsel and although they join with the Defendants in the argument as to why the records should remain sealed to the public, the privacy Plaintiffs take the same position as that taken by the access Plaintiffs in regard to all issues except the type of access which should be allowed to the records.

The parties brought forward an agreed Judgment on October 22, 1986. The Judgment settled all issues of damages on behalf of the named plaintiffs and enjoined the State from investigating or harassing individuals and groups solely due to their exercise of rights protected under the First Amendment. The claims for declaratory judgment, for disclosure of the files, and for attorneys' fees were kept open.

On October 28, 1988, this Court allowed counsel in this case to make Commission files and information available to counsel in *Mississippi v. United States and Kirksey,* No. 87–3464 (D.D.C.) who had executed a confidentiality oath. The restrictions of that Order were the same as those established in the case at bar under Orders entered on February 19 and April 29, 1982, November 29, 1984, and August 10, 1985.

On May 16, 1989, the State filed a separate action in the Chancery Court of Hinds County, on behalf of the President of the University of Southern Mississippi. This suit requests a declaration to determine whether some papers given to the university library by former Governor Paul B. Johnson are under the 1977 statute. According to the Complaint, the documents relate to the Commission and may be Commission files.

## II. CONCLUSIONS

This Court must now decide the remaining claims for declaratory and injunctive relief. The Defendants raise two initial arguments in their Motion for Summary Judgment, that the Plaintiffs have no standing to seek access to the files and that the claims of access are not justiciable because the issue of access is not ripe.[4] These are specifically not directed to the claim for a declaration that the Commission deprived the Plaintiffs of rights guaranteed under the U.S. Constitution. In order to address the standing and ripeness issues, the Court must first determine whether the Plaintiffs have suffered a deprivation of their constitutional rights.

### A. *Deprivation of the Plaintiffs' Constitutional Rights*

The nature of the claims for injunctive relief require this Court to determine the claims for declaratory judgment.[5] This Court finds that the State of Mississippi

---

4. The Plaintiffs rely upon the Civil Rights Act of 1871, 42 U.S.C. § 1983, as one basis of the jurisdiction of this Court. While suits against state officers in their official capacities are generally barred by the Eleventh Amendment, *Will v. Michigan Department of State Police,* — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), this suit seeks no monetary damages, only injunctive relief. For this purpose state officials are "persons" under the Civil Rights Act and the case is

properly brought. *Id.* n. 10 at — U.S. page —, at 109 S.Ct. pages 2311–12.

5. A class may not seek injunction by a claim of an indirect harm which chills certain rights. The class must show a direct injury as a result of the challenged action. *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) *reh'g denied,* 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165, *see also,* sections II.B and II.C., below. The Court rules upon the retrospective claim as an element of the prayer for prospective relief,

acted directly through its State Sovereignty Commission and through conspiracy with private individuals to deprive the Plaintiffs of rights protected by the Constitution to free speech [6] and association [7], to personal privacy [8], and to lawful search and seizure,[9] and statutes of the United States. Deprivations were accomplished through unlawful investigations and through intentional actions designed to harass and stigmatize individuals and organizations engaged in speech and conduct protected by the United States Constitution. The targets of Commission activity were designated by members and agents of the Commission. There is no record that a search warrant or any other judicial sanction of Commission acts was either sought or received. The avowed intent of the Commission and its co-conspirators was to chill or preclude the Plaintiffs from speech, assembly, association, and the petition of government.

These findings are supported by clear and convincing evidence in the record.

---

without considering the fitness of the declaratory claims, had they stood alone.

**6.** Commission investigations were focused upon civil rights organizations engaged in an area of speech, press and association of vital importance. An investigation of this kind may infringe protected liberties, but may do so only according to a compelling state interest. *Scull v. Virginia,* 359 U.S. 344, 79 S.Ct. 838, 3 L.Ed.2d 865 (1959). A "chilling effect" may arise from an investigation which has an arguable likelihood of dissuading individuals from exercising their freedoms of speech and association. *Socialist Workers Party v. Attorney General,* 419 U.S. 1314, 95 S.Ct. 425, 42 L.Ed.2d 627 (1974) (Marshall, J., as circuit justice). Even if the purpose of the Commission was to determine the extent of Communist subversion of the laws of the United States, the activity of the Commission in investigating individuals strictly as a result of their association with civil rights organizations could infringe their rights. *De Gregory v. Attorney General of New Hampshire,* 383 U.S. 825, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966) (contempt conviction of witness refusing to answer historical questions in state investigation of Communist activity unconstitutional). The interest of the State in investigating integrationists was not compelling but constituted an unconstitutional chilling of free speech and associations.

**7.** The freedom to engage in association for the advancement of beliefs and ideas is a liberty interest protected under the Fourteenth Amendment. *NAACP v. Alabama* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). (NAACP not required to produce membership lists to state Attorney General under Court discovery order.)

**8.** A state has the power to adequately inform itself to act to protect its legitimate and vital interests. This power is not without limit, and a charge that particular inquiries violate the First and Fourteenth Amendments may be answered only by a convincing showing that the information sought was related to a subject of overriding and compelling state interest. *Gibson v.* *Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). (state was unable to justify demand for names of NAACP members by charge that individual members were Communist conspirators).

The liberty interest in privacy encompasses freedom to make certain choices without government interference and freedom not to disclose facts in which the government has no legitimate and proper concern. *Ramie v. Hedwig, Texas,* 765 F.2d 490 (5th Cir.1985) *reh'g. denied* 770 F.2d 1081, *cert. denied* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). This interest is not inviolate. *Ramie,* 765 F.2d at 490 (government interest in investigating an assault outweighed privacy interest in facts which might identify an assailant). However, the interest of the state in thwarting federal law is not a proper concern.

**9.** The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause ...

The direct antecedent to the language of the Fourth Amendment was the argument of James Otis in *Paxton's Case* before the colonial court of Massachusetts, in 1761. Otis attacked the indiscriminate powers of tariff collectors acting under Writs of Assistance as violating the constitution of England because the writs were not directed against a single person. L. Wroth and H. Zobel, 2 *Legal Papers of John Adams,* 107 (1965). The nature of the powers attacked by Otis were analogous to those exercised by the Commission, allowing investigation and compulsion by state agents without a judicial warrant.

Applied to the states through the Fourteenth Amendment in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Fourth Amendment safeguards the privacy and security of individuals from arbitrary governmental invasion, even when the individual is in a public place. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (police random stop to check for license unconstitutional);

This evidence is generally unrebutted by the Defendants.

The Court also finds that the evidence clearly and convincingly demonstrates that a direct result of the acts of the Commission was to memorialize rumors and statements concerning the Plaintiffs, that there is a substantial likelihood that some of these rumors and statements were untrue, and that there is a substantial likelihood that harm to the reputation of such Plaintiffs would accrue if this information were published without an opportunity for rebuttal.[10]

This is a class action in which all claims for damages and other claims that are of relevance to the named Plaintiffs alone have been compromised. The Court is of the opinion that more specific conclusions in this regard would preempt the determinations of courts in which claims to redress specific injuries might be brought.[11]

### B. Standing

The Defendants dispute the standing of the Plaintiffs to challenge the sealing of the Commission files. The basis of this defense is an argument that the Plaintiffs must seek access either to rebut current dissemination of the files or to preempt the ills of dissemination in 2027. The State claims that the penalty provision of Mississippi Code Section 39–5–61 adequately defends against current dissemination and that any claim based upon what is to occur in 2027 is not ripe. The State therefore argues that any claim is hypothetical or abstract and that there is no redress available. The Plaintiffs argue for access to the files in order to exercise interests of liberty in clearing their names and to seek redress in the Courts for actions of the Commission only tangentially related to the

keeping of the files, but of which the files are the only notice.

 A plaintiff has standing to sue in federal courts when he demonstrates that his federal rights are jeopardized by an action of the state. *KVUE–TV, Inc. v. Austin Broadcasting Corporation,* 709 F.2d 922 (5th Cir.1983), *aff'd, Texas v. KVUE–TV, Inc.,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984). Such jeopardy is shown when his rights are deprived, or threatened with deprivation, as a result of the putatively unconstitutional conduct of the defendant, the injury can be traced back to the challenged conduct, and the injury is likely to be redressed by a favorable decision. *Valley Forge College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). An injury must be real, not abstract or hypothetical, but this requirement does not preclude injury which is threatened. *Valley Forge College,* 454 U.S. at 482, 102 S.Ct. at 763. *KVUE,* 709 F.2d at 928. Past wrongs alone are insufficient to grant standing without a continuing adverse effect. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Particularly when the past actions were unconstitutional, the courts will presume conformity in the future, unless there is an indication that the Defendants will not conform. *Hamill v. Wright,* 870 F.2d 1032 (5th Cir. 1989).

 An organization has standing to assert claims for injuries it suffers as an entity the same as though it were an individual. It may also present the claims of its members when those members would have standing to assert such claims in their own right, when the interests involved are germane to the organization's purpose, and when neither the claim nor requested relief

---

*Whalen v. Roe,* 429 U.S. 589, 598 n. 24, 97 S.Ct. 869, 876 n. 24, 51 L.Ed.2d 64 (1977).

**10.** Some of the Plaintiffs are undoubtedly dead. An action for defamation or libel is personal and dies with the person whose reputation is at stake. This does not mean that the law does not recognize that the survivors may be injured, merely that they are barred from seeking relief at law from the publicist.

**11.** Defenses might be raised that such actions are barred by statutes of limitations. It is not for this Court to determine now whether or not the statutes would have tolled. While such a tolling is possible, *see Hohri v. United States,* 782 F.2d 227 (D.C.Cir.1986), *judgment vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), such determinations must be made in light of each individual claim, if any are ever brought.

require the participation of the individual members in the lawsuit. *O'Hair v. White,* 675 F.2d 680 (5th Cir.1982) (en banc).

 A plaintiff who seeks standing to assert a claim that a group was racially stigmatized as a result of a challenged action must show personal injury of a concrete interest as a result. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *reh'g. denied,* 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942. A plaintiff with standing to seek an injunction must complain of an injury which can only be redressed in equity. *O'Shea,* 414 U.S. at 502, 94 S.Ct. at 679.

 The Plaintiffs at bar have alleged that the State acted against them unconstitutionally and that the continuing acts of the State deprive them of their federally protected right of access to the courts and threaten to deprive them of a liberty interest in their reputations. The Plaintiffs include organizations and named plaintiffs on behalf of themselves and of a class. The Court finds that the interests of the class are real and that the class and subclasses are properly certified to seek injunctive relief under Federal Rule of Civil Procedure 23. The named plaintiffs have sufficiently demonstrated a personal injury and interest in the outcome of the litigation on behalf of their sub-classes.[12]

 The Court also finds that the organizations, the American Civil Liberties Union of Mississippi, Inc. and Delta Ministry, bring forward claims both germane to their purposes and sufficiently related to claims which their members would have had standing to assert, were they now before this Court individually, and that their members are not required to participate in the claim or relief. Further, the organizations bring forward their claims as organizations which were the subject of investigations and acts by the Commission and that the files compiled concerning these organiza-

tions may serve as notice of causes of action.

The remedy is properly sought in equity as no relief at law could sufficiently address the claims of the Plaintiffs, whether they be individuals or organizations.

### C. Ripeness

The Defendants claim that the fear of future disclosure is speculative and based upon the subjective belief of future administrative action. However, the terms of the statute now in force require these documents to become open public records in the state archives in the year 2027. While this will occur in the future, it is a certainty under the law.

 Ripeness is a requirement of the Article III mandate that federal courts hear only cases or controversies. The controversy must be of immediacy and reality between parties having adverse legal interests. *Middle South Energy, Inc. v. New Orleans,* 800 F.2d 488 (5th Cir.1986). This requirement is cautionary and is used to prevent the courts from entangling themselves in questions that are abstract or premature. It is not measured by time from an injury, but by certainty. The basis of review for future injury is determined by the likelihood that the injury will occur. *See Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). It is when the injury is contingent upon an event which may or may not occur that the injury is not sufficiently real. *O'Shea,* 414 U.S. at 497, 94 S.Ct. at 676; *Los Angeles v. Lyons,* 461 U.S. 95, 106, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983).

The Plaintiffs claim that the State relies upon the 1977 statute to interfere with their rights to litigate specific claims now existing which cannot be identified until the files are opened. The State does not contend that actions for tortious or unconstitutional conduct might not be proved

---

**12.** The affidavits of the named plaintiffs as well as the records as a whole demonstrate that the class representatives have been subject to investigations by the Commission, that files concerning them exist, and that each seeks to determine from the files whether a cause of action might

exist and whether there is erroneous information which they might be entitled to rebut. The State does not now challenge the named plaintiffs' fitness as class representatives, but challenges the justiciability of the claims brought by the class as a whole.

from these files. This harm is current, ongoing, and its claim is ripe.

 The State ignores this claim and argues that there is no controversy because there is no present threat that the files will be released and thereby injure the reputation of Plaintiffs.[13] The Plaintiffs' attempt to rebut false claims in the files, is not rendered unripe because the harm to reputation will occur in the future. It is now a legal certainty which is no less contingent than any other statute. Ripeness does not require injury before the seeking of an injunction that might prevent it.

 The injunction is an equitable device, designed to prevent what law might otherwise allow. Equity does not suffer a right denied to be without remedy. It is artless of the State to contend that the Plaintiffs must wait until the eve of an injury, but to admit that they will then be dead, having taken any cause of action to the grave. The Court finds that the claims of the Plaintiffs for injunctive relief are ripe for adjudication.

### D. Constitutionality of the Statute

The Defendants claim that the 1977 statute is constitutional because it is rationally related to a legitimate State interest, that interest being that individuals mentioned in the files, but who are not in the Plaintiff class desiring access, have a right to non-disclosure of the sensitive personal information contained in the files.

#### 1. The Standard of Review

There is a strong presumption that the acts of a State are constitutional and that the enactments of a state legislature are valid. *See Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) *reh'g. denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (state constitution limit of officeholder from running for another office valid). However, between 1956 and 1973, the State of Mississippi pursued a course of action which was unconstitutional in intent and result. The final act of this tragedy was to cloak state actions in secrecy until those who had been harmed by these acts had died.

It is no great benefit to the state that these deprivations are the result of legislative action. An encroachment by a state legislature on a right conferred by the United States Constitution is void. *McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat. 186, 4 L.Ed. 579 (1819). The prohibitions of the Fourteenth Amendment extend to all actions of a state; whatever the arm of the state taking the action. *Cooper v. Aaron,* 358 U.S. 1, 17, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958). Especially when the rights of free speech and press are at stake, deference to a legislative finding cannot limit judicial inquiry. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 843–844, 98 S.Ct. 1535, 1543–44, 56 L.Ed.2d 1 (1978).

 A statute which burdens a protected right may be upheld only if the State can not only offer evidence of an overriding interest to justify the statute but also show that there is no less burdensome means to achieve that interest. *Islamic Center of Mississippi v. Starkville,* 840 F.2d 293 (5th Cir.1988) (facially neutral zoning ordinance violated free exercise clause). If this statute burdens fundamental Constitutional rights of the Plaintiffs, the State must show a compelling policy underlying the statute which can not be effected by less burdensome means.

The issue at this point of analysis is not whether the promotion of public peace and prevention of racial conflict at the time of the existence of the State Sovereignty Commission were legitimate state interests. Indeed, the State has all but admitted its unconstitutional past actions. The basis is whether there is now a legitimate state

---

**13.** The factual underpinnings of this defense are questionable. The state claims that there is no threat of dissemination, while seeking a declaration in state court that files in the University of Southern Mississippi are not Commission files. Moreover, the State relies upon the enforcement of Mississippi Code Section 39–5–61 to show that there is no threat of present dissemination of material in the files. Even if this were the basis of the demand for access, this defense would be inadequate. As described below, that portion of the statute is unconstitutional on its face.

interest, as asserted by the State, in protecting individuals about whom there is information of a sensitive nature contained in the files from disclosure of that information. The State in essence argues that it seeks to protect the Plaintiffs from themselves. The State seeks to have the strength of its statute measured under the test used for economic regulations that might affect due process.[14] However, this is an inappropriate standard.

The Court concludes that professed interest of the State in continuing the closure of the files is not a legitimate state interest but is a subterfuge for the continuing denial of the constitutional rights of the Plaintiffs.

### 2. The First Amendment Infirmity

■ In support of their motion for summary judgment, the Plaintiffs argue that the sealing of the records is a prior restraint of speech forbidden under *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) and they assert standing to represent the "general public's right to know" under *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Further, in the Motion for Interim Relief, Plaintiff Ken Lawrence separately advances a request that he disseminate information from the files, notwithstanding the criminal penalty provisions of the 1977 statute. Although the issue here is access to files, not to a criminal trial,[15] the Court is compelled by these arguments to consider the prior restraint of speech present in the statute which makes *discussion* of material in the files a felony.[16]

The First Amendment provides:

Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The rights to association and assembly are cognate to those of speech and press. *De Jonge v. Oregon,* 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). Only a compelling state interest may justify limiting these freedoms. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

■ A state may not regulate speech which is neither directed to incite imminent lawless action nor likely to produce such action. *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam) (anti-syndicalism statute violated First Amendment). No matter how narrowly a statute is written, it may not be applied more broadly than the rule in *Brandenburg. See Watts v. U.S.,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam) (conviction for hyperbolic speech threatening life of the President overturned). A State may not punish a third party who divulges information concerning confidential proceedings of a state government. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (State statute forbidding nonparticipants from commenting on judicial discipline proceedings unconstitutional). An act may impermissibly chill the free speech of third parties

---

**14.** The State seeks to apply the standards of *Brennan v. Stewart,* 834 F.2d 1248 (5th Cir.1988) (regulation of hearing aid salesmen legitimate purpose) and *Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5th Cir.1979) (medical malpractice classifications rationally related to legitimate purpose).

**15.** The right to an open criminal trial is held by the public, not solely by the defendant. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The historical origins of this right are suggestive of some issues at bar, particularly the Fourth Amendment tenets discussed in note 9, above. This rule illustrates a broad policy of promoting an informed public, but does not control the specific issues of this case. Neither the First nor the Fourteenth Amendment mandate an unlimited right of access to information controlled by a state government. *Houchins v. KQED, Inc.,* 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). (TV station had no greater right to interview prisoners and photograph site of rape in a jail than any other citizens.) *Cf. Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965).

**16.** The statute provides, "Any person who shall divulge [or], disseminate said files prior to July 1, 2027, shall, upon conviction, be fined ... or imprisoned ... or both." Miss.Code Ann. § 39–5–63 (1988 Supp.)

even if it is only directed at persons who may legitimately be restrained. *In re Halkin,* 598 F.2d 176 (D.C.Cir.1979) (judicial bar to discussion of discovery materials must be supported by specific reasons to allow chilling of speech).

 The protection of official or institutional reputation cannot justify repressing speech that would otherwise be free. *Landmark Communications,* 435 U.S. at 841, 98 S.Ct. at 1542. While the State might prohibit the breaking of the seals of the files, it may not criminalize the discussion of material within the files merely because it is so filed. The Court finds that Mississippi Code Section 39-5-63, under which any person who disseminates or divulges any information contained in the files commits a felony, is an impermissible prior restraint upon free speech.

3. The Denial of Access to the Courts

 The right to bring a claim before a court of law is fundamental and is protected by the United States Constitution whether the claim arises under state or federal law. The right is grounded in the First Amendment right to petition the government for redress, the Article Four protection of privileges and immunities, and the due process clause of the Fourteenth Amendment. *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983).[17] Only a "compelling state interest" can justify a limitation of the right to access. *Ryland,* 708 F.2d at 972.

 Some of the actions evidenced in the files could be the subject of claims for damages under state law. Once access

to the courts has been made a right or a necessity, a state may not deprive anyone of that access unless the balance between the state interest and the private interests favors the government scheme. *Logan v. Zimmeran Brush,* 455 U.S. 422, n. 430, 102 S.Ct. 1148, n. 1154, 71 L.Ed.2d 265 (1982). Although a state may limit or extinguish causes of action under state law through the operation of statutes, or create statutory immunity for state officials, *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), *reh'g. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606, an impediment created by a state which prevents access to its courts necessary to protect a fundamental interest, if the courts present the exclusive source of that protection, is a denial of due process. *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (substantial filing fee for a divorce was unconstitutional). The act of a state officer to conceal information necessary to bring suit specifically violates the rights of the potential plaintiffs. *Ryland,* 708 F.2d at 973 (agent of the state who conspired to conceal evidence of an act for which wrongful death claim could be brought violated plaintiffs' rights) *cf. Bell v. Milwaukee,* 746 F.2d 1205 (7th Cir.1984). The Court finds that Mississippi Code Section 39-5-63 is an impediment to relief in the courts of Mississippi and therefore denies a liberty and property interest protected by the United States Constitution.

In light of the findings made concerning the acts of the Commission, it is apparent that claims based on these acts could be brought before the federal courts.[18] The

17. *See also Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (right of action is liberty interest); *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (right of action is property right). This right of access to the courts applies to the bringing of general civil cases as well as constitutional claims. *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986) (section 1983 claim), *applying Chambers v. Baltimore & Ohio Railroad Co.,* 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907) (diversity tort action); *Bodie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (divorce); *Corpus v. Esetelle,* 551 F.2d 68 (5th Cir.1977) (habeas).

18. A cause of action for certain violations of the Bill of Rights can be implied directly from the U.S. Constitution, with jurisdiction premised on the federal question statute. *See* 28 U.S.C. § 1331; *Bush v. Lucas,* 462 U.S. 367, 374, 103 S.Ct. 2404, 2409, 76 L.Ed.2d 648 (1983) (First Amendment); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment). Further, 42 U.S.C. §§ 1981, 1982, 1985, and 1986 allow individuals whose constitutional and statutory rights have

Court has found as a matter of fact both that evidence which would support such actions is contained in the files and that these files are likely to be the only source for such evidence in some instances.

Under the Supremacy Clause,[19] state law may not deprive a person of these causes of action, even if the state statutes which would do so are otherwise valid.[20] Once Congress has removed an element of state immunity, the state may not replace it by its own statutes. *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980). *reh'g. denied* 641 F.2d 403. (Mississippi statute restricting awards of attorney's fee under 42 U.S.C. § 1988 to those authorized by legislature void under Supremacy Clause).

▆▆▆ A cause of action in the courts of the United States arising under federal law may not be extinguished by a state legislature. Mississippi Code Section 39–5–63 violates the Supremacy Clause as an impediment to the jurisdiction of the courts of the United States. It is also an impediment to the relief of individuals by the courts of the United States, and, therefore, a denial of an interest protected under the Fourteenth Amendment.

### 4. The Harm to Reputation

▆▆▆ The protection of reputation against libel is generally left to the states, but this does not mean that the right to protect one's good name is any less basic under the United States Constitution. *Gertz v. Welch,* 418 U.S. 323, 341, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) (defamation standards in suit against press by public figure not extended to private person). An assault upon an individual's good name, reputation, and honor constitutes a deprivation of a liberty interest under the Fourteenth Amendment.[21] However, to be actionable, the injury to reputation must also harm another interest protected by law. *See Wells v. Hico Independent Schools,* 736 F.2d 243 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985); *Bartel v. FAA,* 725 F.2d 1403 (D.C.Cir.1984). A delay in allowing a person to rebut untrue assaults upon reputation may constitute a separate violation of due process. *Lyons v. Barrett,* 851 F.2d 406 (D.C.Cir.1988) *following Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir.1980). After affording an opportunity to clear one's name, no liberty interest is affected by the charge. *Perry v. F.B.I.,* 781 F.2d 1294 (7th Cir.1986), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25.

The private interest involved is balanced in the test of *Mathews v. Elridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975). The nature of the private interest is compared to the administrative burdens of greater safeguards and to the difference between the likelihood of wrongful deprivation and the probable value of alternative safeguards. *Perry,* 781 F.2d at 1304. So long as the private interest is not *de minimis,* the requirements of due process must be satisfied. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (regulation allowing student suspension for 10 days without notice violated rights to due process).

been violated to bring a cause of action to secure those rights.

**19.** This Constitution, and the Laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the contrary notwithstanding.

U.S. Constitution, Article VI, clause 2.

**20.** *See, e.g., Hamm v. City of Rock Hill,* 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), *reh'g. den.,* 379 U.S. 995, 85 S.Ct. 698, 13 L.Ed.2d 614 (Civil Rights Act of 1964 abated a state prosecution for trespass.); *U.S. v. Peters,* 9 U.S. 115, 5 Cranch 115, 136, 3 L.Ed. 53 (1809).

**21.** *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (actions under statutory scheme unconstitutionally branded citizens as alcoholic and denied them right to buy liquor without opportunity to respond to the charges); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reh'g. denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811. From a collective reading of these cases, it is apparent that the hearing must be allowed to each individual, even if the deprivation is to a collective under a statute, if each member of the collective has a distinct basis of claiming false assault upon reputation.

The right to clear one's name of false allegations contained in records or files is limited. If the files are confidential, and there is no allegation that the material in them is likely to be made public, no right to rebut exists. *Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir.1985); *Sims v. Fox,* 505 F.2d 857 (5th Cir.1974) (en banc) *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).

■ The Court finds that the State has collected untrue statements that will stigmatize some of the Plaintiffs upon dissemination, that these statements are memorialized in the files, and that the files are not confidential as contemplated in *Sims* and *Kelleher* due to the legal certainty of their future publications. The actions of the State in enacting the 1977 statute will effectively prevent an opportunity for these Plaintiffs to rebut the rumors and allegations the files contain. The acts of the State in creating false records which would harm the reputation and good name of its citizens, in designating a time to publish such records and in denying those citizens an opportunity to rebut the records, deprived those citizens of a liberty interest in reputation. Further, the delay in access to the files, coupled with the derogation of the rights of the Plaintiffs in the investigations from which the files were made, is a taking of a liberty interest of all of the Plaintiffs.

### 5. The State Policy and Less Intrusive Alternatives

■ The State argues that Section 39–5–63 is necessary to protect the legitimate privacy interests of those discussed in the files. Such a privacy interest would include both the private details of those who were investigated and the actions of those who aided the State in its campaign. The State would protect these interests until 2027, when it expects most of those concerned to be dead. This is not a real protection of privacy. The interests of the state's co-conspirators are far beyond the protection of individuals from state intrusion. The interests of those investigated have already been compromised, and this is only a brief hiatus from further harm. This is not a policy of compelling interest. However, even if it were a sufficient interest to initially justify the constitutional defects of the statute, these interests in privacy could be adequately protected with less intrusion on the rights of the Plaintiffs through the operations of existing law.

Mississippi law, notably the Mississippi Public Records Act of 1983, *codified,* Miss. Code Ann. § 25–61–1, *et seq.,* would govern maintenance and access to the files in the absence of Mississippi Code Section 39–5–61. The Public Records Act provides that all public records are public property which may be inspected by any person unless they are excluded in Sections 25–61–9 or 25–61–11. Section 25–61–9 provides exemption of material furnished to the state agency by third parties containing sensitive commercial material. Section 25–61–11 provides that the Public Records Act shall not supersede any privilege created by a statute or judicial decision of the State of Mississippi or the United States.[22] An individual or agency who claims such a privilege may find equitable relief under Section

---

**22.** Mississippi statutes exempt a variety of material from the Act, some of which include: Certain personnel records. Miss.Code Ann. § 25–1–100. Certain judicial records. Miss. Code Ann. § 9–1–38. Certain tax records. Miss.Code Ann. § 27–3–77. Certain academic records. Miss.Code Ann. § 37–11–51. Certain hospital records. Miss.Code Ann. § 41–9–68.

The most pertinent exemption is that for police investigative files, that are

"compiled in the process of detecting and investigating any unlawful activity or alleged unlawful activity, the disclosure of which would harm such investigation, would reveal the identity of informants, would prematurely release information that would impede the public body's ... efforts in such proceedings, would disclose investigatory techniques, would deprive a person of a right to a fair trial or an impartial adjudication, would endanger the life or safety of a public official or law enforcement personnel, or are matters pertaining to quality control or PEER review activities ..."

Miss.Code Ann. § 45–29–1 (1988 Supp). While this section does not apply to the files under consideration in this case as they were created, certain material in the files could relate to other investigations that are still current. However, the likelihood of this being the case is remote, given the seventeen years since the last file was made.

25–61–13(2) and the general jurisdiction of the state courts.

While this statutory scheme does not prevent all private matters from public exposure, it does exclude those which are likely to be most sensitive. Further, the exclusion provided for these materials will be determined initially by suitably trained archivists, subject to the scrutiny of the chancellor if the determinations are challenged. The Court finds that current application of these standards is available as a less intrusive means of protecting the privacy interest of the Plaintiffs from further derogation. This finding is reached in light of the actions of the State in jeopardizing those privacy interests in compilation of the files and of the actions of those discussed in the files who acted in concert with Commission agents. The privacy interest of these individuals will not stand against the rights of those who were harmed by the Commission to know the extent of their injury.

### 6. Summary

The Court has found that portions of Mississippi Code Section 39–5–63 create an impermissible prior restraint upon speech and are unconstitutional. The Court has also found that the remainder of Mississippi Code Section 39–5–63 both denies some of the Plaintiffs access to the courts and extinguishes the liberty interest of some Plaintiffs in protecting their reputations from untrue claims which might stigmatize them in their community. Both interests are protected under the Constitution. The justification which has been advanced by the State to support the statute is to protect the privacy of individuals discussed in the files during their lifetimes. This is not compelling in light of the serious encroachment of the statute upon rights of the Plaintiffs under the First Amendment of the Constitution. However, the Court has also found that this justification, if it were compelling, could be served by less intrusive means. The statute is an impermissible denial of due process of law.

The Court has also found as a matter of fact that the 1977 statute was premised in part on a desire to limit the liability of the State and its co-conspirators. The State has attempted by this guise to frustrate the jurisdiction of the courts of the United States in order to avoid potential liability and, in doing so, has violated Article Six of the United States Constitution.

### E. Nature of the Relief

There have been few cases in which the claims rested on a pattern of unlawful investigation and an element of requested relief was knowledge of the investigative report. Each of those known to the Court resulted in agreed judgments of limited precedential value.[23] The Court notes that the remedy below is consonant with the remedies reached in those cases.

The Court has found that actions of the Commission violated the rights of the Plaintiffs throughout the 1960's. One element of this harm was the deliberate secrecy with which the Commission acted. The denial of access to the Commission files perpetuates this pattern of injury. The State has failed to show a sufficiently compelling reason to intrude upon these rights. The State acted unconstitutionally in compiling these files, and this statute merely perpetuates the unconstitutional acts. The Court has found that the statute is facially unconstitutional as a prior restraint of speech, as a violation of the Supremacy Clause, as an impermissible limit of access to the Courts, and as a harm to a protected interest in individual liberty.

This Court has broad powers in equity to injunctively remedy these denials and exercises this power cautiously.[24] In consider-

---

**23.** One of these has been reported, *Handschu v. Special Services Division,* 605 F.Supp. 1384 (S.D. N.Y.1985), *aff'd.,* 787 F.2d 828 (2d Cir.1986). The Plaintiffs have provided copies of the judgments in *Wilkinson v. F.B.I.,* CV 80–1048 WT (C.D.Cal.1984); *Alliance to End Repression v. Chicago,* 91 F.R.D. 182 (E.D.Ill.1981); *Kendrick*

*v. Chandler,* C.A. 76–449 (W.D.Tenn.1978) to the Court and opposing counsel.

**24.** The U.S. District Court has broad power in equity to remedy a civil rights violation. *Columbus Board of Education v. Penick,* 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979) *citing Swann v. Charlotte–Mecklenberg Board of Edu-*

ing whether to issue an injunction, the Court has balanced the equities between the claims of the Plaintiffs and the real interests in privacy that might be harmed by such an injunction.

The Court has considered moderating its injunction to allow a period of time for individuals to assert privileges protected under law or exemptions to the Mississippi Public Records Act. As a practical matter, the Court deems that few such privileges could be asserted and that the few assertions which could be well made, such as for academic transcripts copied into the files, are adequately protected through existing law. Further, indexing the files and locating each class member to provide notice sufficient for this remedy would be enormously time consuming and expensive for the State and would substantially delay the relief granted.

In balancing the equities, the Court also considers the effect of the injunction on the public. To open the files would further the general principle of informed discussion of the actions of government, while to leave the files closed would perpetuate the attempt of the State to escape accountability. Opening the files would also end public speculation as to the extent of the acts of the Commission, much of which has far exceeded the record. However, if the injunction is not granted, every person who believes that he might have a claim either against the State or its coconspirators would have to file a complaint and seek a discovery order to open the records and determine if a case might exist. Further, no person who merely suspects that the files contain inaccurate information but who does not have a good faith belief that the material either will be disseminated in his lifetime or is the basis of a lawsuit would be able to clear his name.

In determining which subclass presents the more compelling method of relief, the Court considers that many members of the initial Plaintiff class are not Mississippi residents, some have new names, and some could not be identified by an archivist. In a sense, this class is indistinguishable from the public as a whole. Although the class is properly designated by definition, the demarcation of its boundaries is a great task. As between either subclass, if injunctive relief is awarded, it must be to those who seek unrestricted access.

Federal jurisprudence expresses a clear preference for remedies that allow speech rather than those which deny. "In the face of a falsehood, the remedy must be more speech, not enforced silence." *Meese v. Keene*, 481 U.S. 465, 481, 107 S.Ct. 1862, 1871, 95 L.Ed.2d 415 (1987) *quoting*, Brandeis, J., *Whitney v. California*, 274 U.S. 357, 377, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927).

There may be cause to deny this injunction as it would affect a statute rather than an administrative decision of the state. However, a constitutional right can be neither nullified openly and directly by state legislators nor nullified indirectly by them through evasive schemes. *Cooper v. Aaron*, 358 U.S. 1, 17, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958). The balance of equity tilts toward the grant.

The Court therefore finds that the Plaintiffs are entitled to relief which the Court should grant by its powers in equity. The Court finds further that the great weight of public policy favors such a grant.

In light of the form of relief granted hereby, the Court finds that the Motion for Interim Relief submitted by Ken Lawrence is rendered moot. As the Motion of the Plaintiffs for Summary Judgment contains

*cation*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971), *reh'g. denied*, 403 U.S. 912, 91 S.Ct. 2200, 29 L.Ed.2d 689 (school desegregation remedies). This power, when exercised to enforce a right under the Civil Rights Act, is to be exercised only on the basis of a constitutional violation, the nature of which will determine the scope of the remedy. *Milliken v. Bradley*, 418 U.S. 717, 738, 94 S.Ct. 3112, 3124, 41 L.Ed.2d 1069 (1974). The Civil Rights Act of

1871 allows equitable relief when equity properly affords a remedy which does not excessively entangle the federal court in state proceedings. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). This power in equity is to be exercised while being conscious of the dictates of comity and federalism. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (pattern of police misconduct insufficient to show policy of condoning misconduct).

no claims unrelated to those in its previous complaints, but new arguments advancing the same relief, the Court will allow the Motion to Amend the Complaint to the extent new matter is pled in the Motion for Summary Judgment.

IT IS THEREFORE ORDERED that the Motion of the Plaintiff to Amend Complaint is granted.

IT IS FURTHER ORDERED that Section 39–5–63 of the Mississippi Code of 1972 is hereby declared to be contrary to the United States Constitution.

IT IS FURTHER ORDERED that an injunction should issue permanently enjoining the Defendants, and their successors in office, from enforcing Mississippi Code Section 39–5–63 and that the Defendants and their successors in office shall maintain the files of the State Sovereignty Commission as any other public record according to state and federal law. Such an injunction shall be entered by separate order.

IT IS FURTHER ORDERED that any class member may at any time hereafter file with the custodian of the Sovereignty Commission files any rebuttal to any allegation, charge or other information about that class member contained in such files. Any such rebuttal shall become a part of the Sovereignty Commission files and shall be indexed or otherwise cross-referenced to the reference about the particular class member contained in the original file. In order to facilitate such cross-reference, the class member submitting such rebuttal shall recite the precise reference in the original files which he intends to rebut.

IT IS FURTHER ORDERED that the named Defendants and their successors in office are charged with serving notice of this Order to class members. Such notice is to be effective but not overly burdensome and may be by commercial publication. The Defendants shall submit a plan describing their method of providing notice to the class within fifteen days of the date of this Memorandum Opinion and Order. Any objections the Plaintiffs may have to this plan shall be submitted to the Court within fifteen days of its submission.

SO ORDERED.

## ORDER

The Defendants, and their successors in office, in their official capacities, are permanently enjoined from enforcement of Mississippi Code section 39–5–63, which provides:

Any person who shall willfully break any seal containing the impounded files of the State Sovereignty Commission, or willfully examine, divulge, disseminate, alter, remove, or destroy said files prior to July 1, 2027, shall, upon conviction, be fined not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00) or imprisoned for not more than three (3) years, or punished by both such fine and imprisonment.

From the date of this order, the Defendants and their successors in office shall therefore maintain the files of the State Sovereignty Commission as any other public record according to law.

The Defendants and their successors in office shall permit any class member at any time hereafter to file with the custodian of the Sovereignty Commission files any rebuttal to any allegation, charge or other information about that class member contained in such files. Any such rebuttal shall become a part of the Sovereignty Commission files and shall be indexed or otherwise cross-referenced to the reference about the particular class member contained in the original file. In order to facilitate such cross-reference, the class member submitting such rebuttal shall recite the precise reference in the original files which he intends to rebut.

SO ORDERED.