**AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI, et al., Plaintiffs,**

v.

**Kirk FORDICE, et al., Defendants.**

No. Civ.A. 3:77–CV–47B.

United States District Court, S.D. Mississippi, Jackson Division.

March 19, 1999.

Elizabeth Jane Hicks, Elizabeth Jane Hicks, Attorney, Barry H. Powell, Barry H. Powell, Attorney, Dixon L. Pyles, Sr., Pyles & Tucker, Luke Dove, Dove & Chill, Jackson, MS, for Plaintiffs.

Edward J. Peters, District Attorney's Office, Eugene Carroll Stone, III, Davis C. Scott, Jr., Office of the Attorney General, Jackson, MS, for Defendants.

## GENERAL OPINION AND ORDER

BARBOUR, District Judge.

This cause of action is before the Court pursuant to the privacy requests of numerous individuals named in the files of the former Mississippi Sovereignty Commission ("Sovereignty Commission"), which are archived by the Mississippi Department of Archives and History ("MDAH"). The Sovereignty Commission was an intelligence agency established "to protect the sovereignty of the State of Mississippi ... from encroachment thereon by the Federal Government...." Miss.Code Ann. § 3–1–11 (1972). The true purpose of the Sovereignty Commission was to maintain racial segregation in the State of Mississippi (the "State") by any means necessary despite contrary rulings of the United States Supreme Court. The Sovereignty Commission was formed in 1956 and formally disbanded in 1977, at which time the Mississippi Legislature passed a law requiring that the files compiled by the Sovereignty Commission be sealed until half of a century later, in the year 2027. Over two decades of litigation regarding the Sovereignty Commission files have ensued.

In a Memorandum Opinion and Order entered on May 31, 1994, this Court held that the sealed files of the Sovereignty Commission would be made presumptively open to the public, but that individuals named in the files would be given an opportunity to file privacy requests for the sealing of individual files, the redaction of names and identifying information from Sovereignty Commission documents and/or the submission of rebuttal materials. *American Civil Liberties Union v. Fordice*, 969 F.Supp. 403 (S.D.Miss.1994) (the "1994 Opinion"), *aff'd*, 84 F.3d 784 (5th Cir.1996), *cert. denied*, 519 U.S. 992, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996).[1] The Court now has before it the privacy requests of some 42 persons who submitted privacy requests. The Court will refer to those persons as "Respondents." The Court is releasing this General Opinion and Order for the following purposes: (A) to report on the submission of privacy requests; (B) to explain the methodology it employed when reviewing the privacy requests; and (C) to provide public notice that the Court is entering under seal 42 opinions which address the privacy requests of each Respondent (the "Individual Opinions"). The Court also provides notice to Respondents of their right to appeal; offers guidance to the Clerk of Court regarding the distribution of the Individual

---

1. The facts of this case are set forth in detail at *American Civil Liberties Union v. Mabus*, 719 F.Supp. 1345 (S.D.Miss.1989) (holding that the Sovereignty Commission files should be opened to the general public), *vacated*, 911 F.2d 1066 (5th Cir.1990) (remanding the case for the district court to devise a method for releasing the files while also protecting personal privacy interests).

Opinions; and dispenses with a variety of pending motions in this case.

## A. Submission of Privacy Requests

In its 1994 Opinion, the Court required that the State place newspaper advertisements to notify members of the general public of the opportunity to submit written requests to MDAH to determine whether their names appear in the Sovereignty Commission files. On or about Monday, January 20, 1997, and January 27, 1997, the State placed such advertisements in the *New York Times, USA Today,* the *Wall Street Journal* and 23 daily newspapers in Mississippi.[2] The State received 974 responses which met the postmark deadline of April 28, 1997. Acting on behalf of the State, MDAH rejected 17 submissions as late because they were not postmarked on or before April 28, 1997. MDAH then sent a follow-up questionnaire to each of the remaining individuals. A total of 701 individuals timely responded, and MDAH found matches in the Sovereignty Commission files for 357 of those individuals.

On August 15, 1997, MDAH mailed to those 357 individuals copies of the Sovereignty Commission documents containing their names, along with a Declaration of Options allowing them to request redaction or sealing of documents and/or to submit rebuttal materials to MDAH. Of those 357 individuals, 42 Respondents submitted some form of privacy request. MDAH released the uncontested records of the Sovereignty Commission to the public on March 17, 1998.

## B. Methodology of Review

The Court received the submissions of the 42 Respondents under seal, along with the responses of the State, the Access Plaintiffs, who have argued for unlimited public access to the Sovereignty Commission files, and the Privacy Plaintiffs, who have argued for the privacy protections for those individuals named in the files. The Court considered the Declaration of Options submitted by each Respondent, making an intensive document-by-document inquiry as to whether each Respondent is entitled to the requested form of privacy protection, be it the sealing of an individual file, the redaction of identifying information or the submission of rebuttal materials.

As a practical matter, the decision of the Court as to the requests of each Respondent usually turned on the classification of the Respondent. The 1994 Opinion of the Court divided the persons named in the Sovereignty Commission files into two categories: "victims" and "state actors." *Id.* at 409. A "victim" is "any person who was subject to investigation, surveillance, intrusions or the dissemination of false and misleading information by the Sovereignty Commission of the State of Mississippi or those acting in conjunction with that agency." *Id.* A "state actor" is "any member, employee or informant (paid or otherwise) of the Commission and any person who requested information from the Commission during its existence." *Id.* The Court carved out certain exceptions to the state actor category, holding that "[t]he state actor category does not include persons employed by the State, such as a state legislator, unless that person was affiliated with the Commission in the manner described above or requested information from the Commission during its existence." *Id.*

In its review of the requests for sealing or redaction of documents, the Court discovered the need to clarify the scope of the "state actor" category as it pertains to law enforcement personnel. The Court did not address this issue previously, nor did it arise on appeal. Under the terms of the 1994 Opinion, law enforcement personnel who acted in conjunction with the Sovereignty Commission to violate the constitutional rights of victims are deemed to be to be state actors who have waived their pri-

---

**2.** Information pertaining to the implementation of the 1994 Opinion is derived from the Report of Implementation submitted to the Court by the State on June 12, 1998.

vacy rights. However, a close reading of some of the documents in the files revealed that certain law enforcement personnel occasionally provided information to the Sovereignty Commission in a cooperative, good faith attempt to protect the public peace or investigate crimes.

The Court finds that, because of the unique situation of law enforcement personnel, such a person might be classified as a state actor in regard to some documents and as a victim in regard to others. The Court further finds that this distinction should be made by referring to the contents of each document to determine in regard to the actions described therein whether the person was acting to violate the constitutional rights of a victim. The Court applied this clarification of the 1994 Opinion when reviewing the privacy requests of certain Respondents.

## C. Release of Opinions Under Seal

The Court has prepared an Individual Opinion pertaining to the privacy requests of each of the 42 Respondents. In most cases, the Court found that the Respondent was properly classified as a victim and granted the Respondent's privacy request in full. In other cases, the Court denied the privacy requests of a victim in whole or granted the privacy requests only in part, often because the documents under review were published news documents. In a small number of cases, the Court found that the Respondents were state actors and denied their privacy requests in part, in cases involving law enforcement officials who sometimes acted in good faith, or in whole, where the Respondent was a collaborator with no good faith defense.

The Individual Opinions are being released under seal because they contain specific references to documents in the Sovereignty Commission files. Following final review on appeal or expiration of the time for appeal in regard to any of those 42 opinions on which no appeal is taken,

the seal shall be lifted from those Individual Opinions where the Respondent was not granted any privacy requests, merely submitted rebuttal information or was classified as a state actor. The words "TO BE FILED UNDER SEAL" appear at the outset of these Individual Opinions. The remaining Individual Opinions will remain sealed. The Court has placed the words "TO BE FILED UNDER SEAL PERMANENTLY" on those Individual Opinions because the privacy of a Respondent who has been granted redaction or sealing relief would be violated by release of his Individual Opinion. After that time, as to the documents with which the Individual Opinions are concerned, MDAH will make the redactions directed by the Individual Opinions, and the seal will be lifted as to those documents. In a few instances the Court has ordered that entire documents remain permanently sealed.[3]

On March 19, 1998, the Access Plaintiffs filed their Motion to Clarify Openness of Court Files seeking the lifting of the seal on most of the pleadings contained in the official court file. The Court has publicly issued a number of Opinions, including this one, which adequately explain the litigation process. To open the entire Court file would release certain information which is ordered to be permanently sealed in the Individual Opinions. To try to separate that information from the documents in the Court file would be a monumental and unnecessary task. The Motion is DENIED and the portions of the Court file which are sealed will remain sealed. The Confidentiality Oath filed in this case will continue to be enforceable.

The Court is concurrently dismissing without prejudice all other pending motions in this matter, at least some of which appear to be moot due to the entry of this General Opinion and the accompanying Individual Opinions. The parties may later re-file such motions if they feel the issues presented in those motions have not been addressed by the Court.

3. In the Individual Opinions, the Court has provided MDAH with specific instructions as to the redactions to be made and which entire documents will remain permanently sealed.

IT IS THEREFORE ORDERED that the Clerk of Court shall transmit to each Respondent a copy of this General Opinion and Order and a copy of the applicable Individual Opinion. The Clerk of Court shall also transmit a copy of this General Opinion and Order and a copy of each separate opinion to each attorney of record.

IT IS FURTHER ORDERED that the Motion to Clarify Openness of Court Files Regarding All But Currently Challenged Materials [159] is not well taken and is hereby DENIED.

IT IS FURTHER ORDERED that all other pending motions in this case [entered docket as numbers 146, 151, 162 and 166] are hereby dismissed without prejudice.